[Civil No. 176.  Filed October 4, 1887.]

[S. C. 15 Pac. 141.]

In re Estate of W. J. Baldridge, Deceased.  JAMES REILLY, Appellant, v. C. S. CLARK, Respondent.

1. EXECUTORS AND ADMINISTRATORS—APPOINTMENT AND REMOVAL—COMP. LAWS ARIZ. 1877, p. 268, par. 1617, CITED—POWER OF REMOVAL DISCRETIONARY—APPELLATE COURT WILL NOT INTERFERE UNLESS ABUSE OF DISCRETION IS CLEARLY SHOWN.—The probate court has the power, under statute, *supra,* to remove an administrator upon the application of a non-resident heir, when the rights of those interested in the estate, shall, in the opinion of the court, require it. Appellate courts will not interfere with a probate judge in the exercise of his discretion in the removal of an administrator, unless he has clearly abused that discretion.

2. APPEAL AND ERROR—FINDING BASED UPON PROOF TECHNICALLY DEFECTIVE WILL NOT BE DISTURBED WHERE SUBSTANTIAL JUSTICE HAS BEEN DONE—AFFIDAVITS TAKEN BEFORE JUSTICE OF THE PEACE WITHOUT THE TERRITORY—COMP. LAWS ARIZ. 1877, p. 473, par. 2863—IDEM, p. 475, par. 2871 CITED.—Where affidavits were taken before a justice of the peace, without the territory, for the purpose of proving the petitioner to be the father of the intestate, and upon

said proof the probate court found, such to be the fact, this court
is not disposed to disturb the finding, though there be technical
defect in the proof, as substantial justice has been accomplished.
Statutes cited, *supra*.

3. EXECUTORS AND ADMINISTRATORS—APPOINTMENT AND REMOVAL—IS
   PARTNER PROPER PERSON TO ACT AS ADMINISTRATOR—COMP. LAWS
   ARIZ. 1877, p. 262, par. 1569, subd. 11, CITED.—Where it appears
   that the administrator removed was jointly interested in certain
   law suits with decedent which said administrator was to prosecute
   and did prosecute under statute, *supra,* does it not make it doubt-
   ful whether or not he was the proper person, to administer upon
   said estate?

4. COMP. LAWS, ARIZ. 1877, p. 263, par. 1584, CONSTRUED.

APPEAL from a Judgment of the District Court of the
First Judicial District in and for the County of Cochise. Af-
firmed.

The facts are stated in the opinion.

Goodrich & Smith and Thos. Mitchell, for Appellant.

George G. Berry, for Respondent.

WRIGHT, C. J.—This case was originally appealed from
the probate court of Cochise county to the district court
therein, and from the latter court it has been brought here.
James Reilly, the appellant, had been the administrator of
the estate of W. J. Baldridge, deceased, for several years;
but on the twenty-second day of March, 1886, the judge of
said probate court, after citation as the law directs, removed
the said Reilly, upon the petition of Henry T. Baldridge,
father and heir of the deceased, and appointed C. S. Clark,
the respondent, administrator of said estate. From this or-
der the appellant appeals; and the main point upon which
he replies for a reversal of the judgments of the courts below
is that the said probate court had no power to grant the
prayer of the petition.

Did the probate court in its action herein transcend its
power? Perhaps no office sustains so close a relation with

the people as that of probate judge. He is the paramount guardian of the county. He has the delicate and responsible duty to guard the interest of the estates of minors and widows. His duty is just as imperitive to also guard the interests of those estates, where there are neither minors nor widows. Perhaps in no department of official life are the trusts reposed by law—more sacred than here. Once in every three or four decades, the estates of the citizens pass through the process of administration. Administrations and guardianships have not always been economical and pure, probably nowhere has there been greater abuse of trusts in this country, than in administrations and guardianships.

The legislature has conferred upon probate judges a large measure of discretionary power in appointing and removing administrators, guardians, etc. Is it not unreasonable to suppose that the legislature would impose duties so delicate, responsible, and even sacred, without at the same time conferring plenary power to discharge those duties in such manner as to subserve the best interests of the estates?

Counsel for the appellant refer us to the opinion of Judge Sawyer in *Re Estate of Carr*, 25 Cal. 586; but we think the cases are not quite similar. There, Bolton, a brother-in-law of the deceased, had been appointed to administer, but failed to qualify. Mark Carr, a brother of the deceased, then applied, but the court, in the exercise of its discretion, denied his application. Then Bennett & Addison, strangers, filed their petition asking that letters issue to them; accompanying which were written requests from Bolton and wife, and Mark Carr, that said petition be granted. As the judge of probate had already judicially determined that neither Bolton nor Carr was competent to administer,—the former because he was unable to give bond; the latter for want of integrity,—the judge also denied this petition. Was this a stretch of judicial discretion? Judge Sawyer thought not, and sustained the action of the probate judge. Will it be pretended, however, that Judge Sawyer, in this decision, means to say that where a party, otherwise entitled under section 67 to administer, is disqualified by reason of non-residence, and a stranger has received letters of administration, this party has no right to petition for, or the probate

judge has no right to order, the removal of the distasteful administrator? Is it not the logic of such a position that in such case there would be no remedy? The party entitled cannot ask to have himself appointed, by reason of non-residence, and the court has not the power to revoke and appoint anybody else. What is to be done? We think, in such case, the probate judge, under the California statute, could either grant or refuse a petition, and his action in either case would be entirely legitimate,—clearly within the sphere of his legal functions. Perhaps one reason that influenced the probate judge in the exercise of this discretionary power was that the Carr estate was already in the hands of the public administrator, an officer sustaining most intimate relations with, and under the absolute control of, the probate judge. Besides, all the parties were residents of the state of California.

Here, Henry T. Baldridge, the father, was and is a nonresident, being a citizen of the state of Tennessee. At the time letters of administration were granted upon his son's estate he was not present, and could not have known whether appellant was a proper person to administer or not. It seems, however, that after the lapse of nearly four years he, and the probate judge as well, concluded that for the good of the estate a change ought to be made. A change was made. The administrator objected on the ground, substantially, that as, by reason of non-residence, the father could not administer, he had no right to ask, and the probate judge had no power to grant, administration to anybody else.

The great purpose for which courts of probate were established was to provide a legal channel through which estates should be transmitted from ancestors to heirs. This was and is the primary object; of course, the payment and collection of debts, etc., are incidental thereto. Where there are no debts the heir is entitled to a speedy admission to his inheritances. In this case there were no debts; and yet, after the lapse of nearly four years, the administrator is reluctant to surrender his charge. Why? True, he impugns the motives of respondent and his attorney; but, if the imputation were true, would their improper motives jus-

tify his wrongful action? Is that really a matter about which he has a right in this behalf to complain? If Baldridge has made a bad selection in securing the respondent to represent him in an estate that is now rightfully his by inheritance, should it concern the appellant? No tie of consanguinity existed between him and the intestate. Now, it is the policy of the law to prevent the wasting of estates in litigation. This may have been an additional reason prompting the action of the probate judge. It seems that appellant during his four years of administration spent $1,3G0, and incurred additional liabilities to the extent of $900, and had only collected $850, and at the same time had become involved in five, and may be six, law-suits.

Appellant's counsel contend that these proceedings were had under section 67, c. 29, Comp. Laws 1877, and that under that section the probate court could not remove appellant and appoint respondent. But it is a familiar rule of construction that the whole act must be taken together, and section 67 is not the only section in the act conferring power of removal upon the probate judge. Our view of that section is that it simply confers a right upon the surviving husband or wife, child, father, etc., to obtain the revocation of letters granted to any one else, and administer themselves; provided they are resident within the jurisdiction, and are otherwise qualified; and that it leaves the determination of these preliminary questions entirely with the court. Section 100 of the same act, however, provides, after declaring that any executor or administrator may resign his trusts after settling up his accounts, and delivering all the estate to the person appointed by the court, that "if by reason of any delays in such settlement and delivering up of the estate, *or for any other cause,* the circumstances of the estate, or the *rights of those interested* in the estate, *shall, in the opinion of the court,* require it, *the court* may, before such settlement of the accounts and the delivering up of the estate shall have been completed, *revoke the powers* or letters testamentary or of administration of such executor or administrator, and appoint in his stead an administrator," etc. Without the aid of this section, the probate judge might in certain cases have been unable to afford adequate remedy,

against a wasteful administrator, to the party entitled to the estate; as in this case, where the father and heir to the estate, by reason of non-residence, could not administer. We think the probate judge had ample power, under the circumstances, to remove the appellant. Appellate courts will not interfere with a probate judge in the exercise of his discretion in the removal of an administrator, unless he has clearly abused that discretion. See *Deck* v. *Gherke,* 6 Cal. 667.

Another point relied on is that there was no legal proof that the petitioner was the father of the intestate. Substantially, we think there was. True, there was a technical defect in the proof. The affidavits were taken before a justice of the peace in the state of Tennessee. Section 427, c. 48, Comp. Laws, 1877, *directs* that affidavits taken in another state or territory, to be used in this territory, shall be taken before a commissioner appointed by the governor of this territory, or before a judge, notary public, or clerk of a court, having a seal. The judge of the county court of Sumner county, Tennessee, certifies to the characters of the affiants for veracity, etc., and the clerk of said county court certifies, under seal of that court, to the official character of that judge, and to the genuineness of the justice's signature, etc. Section 435 of said chapter of the Compiled Laws authorizes any justice of the peace in another state or territory, selected by the officer granting the commission, to take depositions to be read in evidence in this territory. Whether there was a substantial compliance with our law or not, in taking the affidavits, ought that to affect the real question here? The proof seems to have been sufficient to convince the mind of the probate judge. He found the fact, and we are not disposed to disturb that finding. Whether Henry T. Baldridge was the father of W. J. Baldridge, the deceased, or not, was certainly a question of fact, which it was proper for the probate judge to determine. We doubt not, substantial justice has been accomplished, and that the facts are as the judge found them to exist. We cannot see what right the appellant has to complain.

It is not always technically legal proof, to produce conviction in the minds of the triers of facts. There are prob-

ably but few cases tried, into which by inadvertance or otherwise, more or less illegal testimony does not come. Very many lawyers persist in drawing testimony from their witnesses by the illegal method of leading questions. In this case, however, we do not think the appellant has been wronged.

There was another question raised by counsel for the respondent in his brief, and which also appears in appellant's answer, viz., that said administrator, Reilly, was not a proper party to administer on said estate, by reason of his having a partnership interest in a considerable portion thereof. Section 52, p. 262, of said Compiled Laws of 1877, provides that where there is any partnership between the deceased and any other person at the time of the decease, that person shall in no case be appointed administrator. Reilly admits, in his answer, that by an agreement with the intestate, on account of the latter's inability to pay costs, lawyers' fees, etc., he had a half interest in certain lawsuits which he was to prosecute, and did prosecute. This may also have had something to do with his removal. At all events, does it not make it doubtful whether or not appellant was the proper person to administer upon said estate?

We think the judgment should be affirmed, and it is so ordered.

Barnes and Porter, JJ., concur.