77 Ariz. 196 (1954)
269 P.2d 600
In re FARSON'S ESTATE.
MacPHERSON
v.
VALLEY NAT. BANK OF PHOENIX.
No. 5703.
Supreme Court of Arizona.
April 13, 1954.
Rehearing Denied May 25, 1954.
*198 Manuel Avalos and Nolen L. McLean, Tucson, for appellant.
Knapp, Boyle, Bilby & Thompson, by T.K. Shoenhair, Tucson, for appellee.
STANFORD, Justice.
On March 29, 1950, appellant, John Frederick MacPherson, was appointed guardian of the person and estate of his mother, Pearl L. Farson, a mentally incompetent person. The estate was appraised at $322,125.75. In the course of the administration of this estate, appellant submitted two accountings which were approved in the routine manner. On October 31, 1951, he filed his third account and report which was heard December 6, 1951, and was not approved. December 31, 1951, the Probate Judge wrote the attorney for appellant, stating:
"I feel that I would be derelict in my duty if I were to approve the third account and report filed in this court * * *
"I understand that the guardian is the only heir of the estate of the ward, and that some years ago the ward executed a will naming the guardian as sole beneficiary. I also understand that the ward is very seriously ill and in all probability cannot live many months longer. I also understand that the expenditures made from the ward's estate by the guardian were not made in bad faith and that there was no attempt by the guardian to defraud anyone or to pursue any fraudulent course of action. I also understand that the ward's estate is probably in excess of $200,000.00, which is probably far more than ample to keep her in comfort for the remainder of her life.
"The fact remains, however, that this account and report shows an expenditure of more than $40,000.00 between January 1, 1951, and September 1, 1951. I cannot * * * justify expenditures of this size * * * which constitute a reduction of the principal of the estate by one-sixth or perhaps as much as one-fifth.
"While it appears that the guardian is the only heir, I cannot take judicial notice of such a fact any more than I can take judicial notice of the validity of the apparent last will and testament of the ward or whether it is * * * the ward's last will and testament. While it is apparent * * * the ward will not live another 10 years, I cannot say as a matter of fact that she will not live that long and if expenditures were approved at the same rate in the future as they have been *199 made in the past, it is obvious that the ward would be pauperized long before her death. I cannot justify the maintenance of a home in which a relative of the ward, the guardian, and a servant lived and were supported from the ward's estate, the more particularly so when the ward was hospitalized during most of the time. I cannot justify the expenditures of money from the ward's estate for the maintenance of an automobile and a jeep when the ward was totally bedridden during that period. There are many other items in the account and report which cannot be justified at the present time.
"I am further disturbed by the fact that the file shows petitions for orders presented to a judge other than the probate judge of this court and the securing of the signature of said judge upon said orders during a time when the probate judge was present and should have been given the opportunity to consider said petitions. This is particularly true of the order signed on December 8, 1951, pursuant to a petition filed on the same date at a time when you knew that I had under advisement the matter of approval of the acts of the guardian heretofore performed herein.
"The first and second accounts and reports * * * were approved * * *, but the guardian should take warning that the approvals of annual or intermediate accounts are not conclusive and are only prima facie evidence of the correctness of the account and are subject to re-examination upon the hearing of the guardian's final account.
"For the reasons stated herein, therefore, I regretfully inform you that I am unable to approve the third annual account and report."
January 28, 1952, appellant filed a third amended account and report. Hearing was had thereon, February 16, 1952. At the close of the testimony offered to explain and justify the expenditures in the account, the court found that there was no substantial change in this account and report from the original third account and report. Reiterating what he had said in his letter and explaining that therefore the amended account and report were unacceptable, the court entered the following orders: Third amended accounting, disapproved; appellant removed as guardian of the estate; appellee, bank, appointed guardian upon qualifying and posting proper bond; froze the estate checking account and ordered that outstanding checks not be honored; and, froze the personal safety deposit box of appellant. And, the lower court stated, as added grounds for these orders, the fact that appellant had been authorized only two months before the hearing to borrow $5,000 for the estate; that the court had received many calls and similar notices from nurses and persons employed by the estate and *200 who had not been paid for their services; and that the court could not ascertain why, in the light of the large expenditures incurred by appellant and the above authorized borrowing, such bills obviously contracted for the benefit of the ward had not been paid.
According to the testimony at the hearing on the amended accounting, appellant was not at all surprised at his being removed. Appellant also testified that his personal safety deposit box contained many valuables which were part of the estate of the ward.
On this appeal, appellant assigns the following as error: Appellant's removal as guardian of the estate; the appointment of appellee bank as general guardian of the estate; the freezing of the estate checking account and ordering that outstanding checks be not honored; and the freezing of appellant's personal safety deposit box.
Regarding appellant's removal as guardian of the estate, appellant's reasoning in this case is essentially as follows: Numerous other states and California, from which state we have taken our probate and guardian statutes, hold that where the code sets out grounds for the removal of a guardian, the court can remove a guardian upon only those grounds set out in the code. The grounds for removal which the court used as a basis for discharge were clearly statutory, making it unnecessary for us to consider whether only statutory grounds may be the basis for removal of a guardian. Without restating the facts of this case, it is obvious that in the lower court's opinion, although appellant was not considered mentally incompetent or fraudulently mismanaging or misappropriating funds, appellant was considered from a business standpoint, mismanaging the affairs of the estate. Such grounds are clearly set forth in the statute, Section 42-140, A.C.A. 1939.
Since his third account had been refused, and the reasons were given to him by the probate judge for such refusal, it became the duty of appellant to render an amended accounting for the reasonable and proper expenditures incurred out of this estate and his management thereof under the circumstances. Testimony as to the propriety of his expenses make up almost the entire transcript of testimony; in short, appellant was granted ample opportunity to justify his account. The removal of a guardian without written notice is proper where he has been in court and defended himself, In re Kenney's Appeal, 138 Kan. 29, 23 P.2d 597. By this failure to justify the account, by his mismanagement of the estate, and by his failure to amend his account so that it would show reasonable and proper expenditures under the circumstances, appellant, an officer of the court and subject to the control of the court in the discharge of his duties, was subject to be discharged forthwith. In re Guardianship of Chambers, 46 Okl. 139, 148 P. 148, 149. In such instance, a court may remove the guardian from his trust immediately, *201 and we do hold that such was properly done in this case. By way of explanation of the probate court power of removal, we quote from Reilly v. Clark, 2 Ariz. 299, 300, 15 P. 141, decided by the Territorial Court in 1887:
"Did the probate court in its action herein transcend its power? Perhaps no office sustains so close a relation with the people as that of probate judge. He is the paramount guardian of the county. He has the delicate and responsible duty to guard the interest of the estates of minors and widows. His duty is just as imperative to also guard the interests of those estates, where there are neither minors nor widows. Perhaps in no department of official life are the trusts reposed by law  more sacred than here. Once in every three or four decades, the estates of the citizens pass through the process of administration. Administrations and guardianships have not always been economical and pure, probably nowhere has there been greater abuse of trusts in this country, than in administrations and guardianships
"The legislature has conferred upon probate judges a large measure of discretionary power in appointing and removing administrators, guardians, etc. Is it not unreasonable to suppose that the legislatre would impose duties so delicate, responsible, and even sacred, without at the same time conferring plenary power to discharge those duties in such manner as to subserve the best interests of the estates?"
It is the law of guardianships, anciently and well established, that at all times, the court must be guided by what is in the best interest of the ward. And, in order to protect the interests of the ward, as stated in In re Howard's Guardianship, 218 Cal. 607, 24 P.2d 486, 487:
"The power of the appointing court to direct, restrain, and control a guardian in the performance of his duties, and even to remove him and put another in his place, is settled beyond controversy. However, the removal of guardians is not an arbitrary or capricious, but a judicial, discretion, to be exercised with due regard to the legal rights of all concerned." (Citing cases.)
And, as the court held in the above case, we can see no abuse of discretion in this case.
Regarding the appointment of the bank as general guardian of the estate upon appellant's removal, appellant contends that under Section 38-601, A.C.A. 1939, the court could appoint only a special guardian, not a general guardian, awaiting the time when upon proper notice and hearing it could determine whom it should appoint as general guardian. If the court committed error in appointing the bank ab initio as *202 general guardian, it still would not affect the propriety or impropriety of the removal of the appellant as general guardian. There was error under Section 38-601, supra, in appointing the bank as general guardian in that this statute clearly provides that a special guardian be appointed pending a proper appointment of a general guardian. However, since a special guardian's duties are merely to preserve the assets of an estate, and since the duties of the bank as general guardian accomplished the same result, no substantial error was committed by the failure to appoint the bank as special guardian under the circumstances herein.
Finally, regarding the orders freezing the checking account and the appellant's personal safety deposit box, and ordering that the outstanding checks be not honored, since the removal of the appellant as guardian of this estate was proper and based upon the grounds of mismanaging the estate, freezing the checking account and ordering that outstanding checks be not honored were merely prudent moves for the court to make in its capacity as the ultimate guardian of these estates. And, as to freezing the personal safety deposit box of appellant, since the box contained valuables belonging to the estate, it was again proper for the court to place its protective hand over these valuables until the same could be sorted from those items belonging exclusively to appellant. Finding no abuse of discretion in the rendering of any of these orders considered in this paragraph,
Judgment is affirmed.
PHELPS, C.J., and LA PRADE, UDALL, and WINDES, JJ., concurring.