464 P.2d 663

In the Matter of the GUARDIANSHIP OF the Person and Estate of Robert George O'BRIEN and Thomas Henry O'Brien, Minors.

Joseph T. O'BRIEN, Appellant,

v.

TRANSAMERICA TITLE INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Appellee.

No. 1 CA–CIV 883.

Court of Appeals of Arizona.

Division 1.

Jan. 27, 1970.

Rehearing Denied March 3, 1970.

Review Denied March 31, 1970.

Herbert Mallamo, Phoenix, for appellant.

Cavness, DeRose & Senner, by John W. Rood, Phoenix, for appellee.

KRUCKER, Judge.

Joseph T. O'Brien, appellant, was removed from the guardianship of the estate of two minor children, his adopted brothers. Transamerica Title Insurance Company was substituted for him as guardian, and he appeals the revocation and substitution.

Caroline Brandt O'Brien, the mother of the guardian and both wards, died in February, 1964. She was the natural mother of appellant, and had adopted the

two minor children, Robert and Thomas O'Brien, presently eleven and ten years old respectively. In March, 1964, appellant petitioned and was appointed as guardian of the two minor children. At about this time, and up until July, 1965, a will contest was litigated in which the jury decided that appellant had exerted undue influence on his mother's execution of a will in the hospital, which left the minors nothing. There was then issued a decree stating that appellant, his natural sister, and the two boys would take their intestate share of the estate. Also, about this time, litigation took place in Michigan to establish each heir's share under a trust, and it was determined that the two adopted children, not being issue of the body, were not entitled to share. This particular litigation was not pursued directly by appellant, but through counsel appointed by the Michigan trust company. It was never appealed.

During this time, the appellant and his wife had actual custody of the two minors in Phoenix. In late 1965, the family went to Newport Beach, California. Later, in 1966, the family vacationed in San Diego. In January, 1967, the will contest appeal was discontinued and the jury decision became final. Lawyers' fees were negotiated for, but appellant insisted that the minors' fees come from their share of the estate and not from the estate generally. The requested fees were approximately $75,000. However, he also insisted that the fees he had incurred in attempting to probate the invalidated will should come from the general estate.

As the legal fees dispute was not resolved, appellant returned to Arizona from California, leaving his wife and children behind. His wife, shortly thereafter, sued him in California for separate maintenance, and in February, she filed to obtain guardianship over the persons of the minor children. This was granted in a memorandum opinion, apparently subject to findings and a final judgment. By May, at least three petitions for appellant's removal had been filed in Arizona. The court took extensive evidence and consequently revoked appellant's papers over the minors' estate and substituted the Transamerica Title Company. The custody over the persons of the children was not adjudicated by the Arizona court as they were residing in California.

The total assets of the O'Brien estate total somewhere between $700,000 and $1,000,000, of which the minors' share is one half.

There are two issues raised in this appeal:

(1) Was the evidence sufficient to support the revocation of appellant's papers over the minors' estate?

(2) Did the trial court abuse its discretion in revoking the letters?

We take both issues together.

A.R.S. § 14–818 provides the causes for removal of a guardian:

"A guardian may be removed by the court:

1. For abuse of his trust.

2. For continued failure to perform his duties.

3. For incapacity to perform his duties.

4. For gross immorality.

5. For having an interest adverse to the faithful performance of his duties.

6. For removal from the state.

7. In case of a guardian of the property, for insolvency.

8. When it is no longer proper that the ward should be under guardianship."

The trial court's minute entry of October 23, 1967, recited the following:

" * * * [T]here is and has been a conflict in the respective interests of the Guardian Joseph T. O'Brien, and that of the minor children, Robert George O'Brien and Thomas Henry O'Brien; and that the best interests of the said minors would be served by the revocation of the Letters of Guardianship of the * * * estates of said minors, issued to Joseph T. O'Brien."

The general rule, and that in Arizona, is:

"The trial court is usually allowed a liberal discretion in the matter of removing or refusing to remove a guardian, and an appellate court will not interfere with such discretion unless it clearly appears that it has been abused." 39 Am. Jur.2d Guardian and Ward § 57.

5 Bancroft's Probate Practice § 1439; In re Farson's Estate, 77 Ariz. 196, 269 P.2d 600 (1954).

The qusetion here is whether there was sufficient evidence of the conflict of interest between guardian and wards for the trial court to remove appellant as guardian. Appellant's argument here that the evidence is insufficient consists of an analysis of the legal controversies in relation to the estate, presented at trial. The following legal confrontations affecting the wards were presented at the trial:

(1) Defendant and wards were opposed to one another in a will contest which found defendant had exerted undue influence on their mother.

(2) Defendant refused to allow the wards' attorneys' fees from the general estate without adjudication.

(3) Defendant refused to have the Michigan trust action appealed.

(4) The California action re defendant's custody of the persons of wards.

Appellee also discusses the evidence presented as to these proceedings, but additionally points to evidence of appellant's hostile attitude to his wards generally.

In evaluating the propriety of the trial court's decision that there was a conflict of interest between the guardian and his wards, we do not believe there must be evidence presented that the guardian planned or attempted a particular transaction which would harm his wards' estate. We believe, to the contrary, that the philosophy behind this relationship demands that there be no manifest hostility for the wards by their guardian. Cf., In re Dodson's Guardianship, 135 Wash. 625, 238 P. 610 (1925). As put so well in an early California case, In re Howard's Guardianship, Cal., 24 P.2d 482 (1933):

" * * * The great purpose of the law is to secure fidelity in the agent. When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal. His self-interest prompts him to make the best bargain for himself. Humanity is so constituted that, when these conflicting interests arise, the temptation is usually too great to be overcome, and duty is sacrificed to interest. * * * " 24 P.2d at 484.

In the instant case, construing the evidence to sustain the trial court, the guardian actually articulated to others that his status as an heir under the O'Brien estate made him hostile to his wards, who were also competing heirs. Testimony shows he was quoted as saying, "They are not going to get any of my money. That all belongs to me * * * kill the little bastards before they ever get a cent of it."

It also appears from the record that although appellant refused to acknowledge in court that one of the boys has contracted cerebral palsy, he had been heard to say "he wasn't going to be strapped with any C.P. brat all his life."

Without elaborating further, if believed, this attitude does confirm the appellee's version of the specific legal battles mentioned earlier, the will contest, the Michigan trust, the California action, and the attorneys' fee debate. Assuming arguendo that appellant has actually taken no illegal action against the wards' monies, we doubt the trial court, in light of the above evidence, need have tolerated any potential threat to the estate by retaining appellant until such an act occurred. The hostility of appellant toward his wards need not be

tolerated, and the determination to appoint a new guardian was appropriate.

Judgment affirmed.

HOWARD,. C. J., and HATHAWAY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.