502 P.2d 176

In the Matter of the ESTATE of Joseph Thomas O'BRIEN, Deceased, and Caroline Brandt O'Brien, Deceased.

In the Matter of the GUARDIANSHIP OF the ESTATE of Robert George O'BRIEN and Thomas Henry O'Brien, minors.

Suzanne BATES, and Kenneth Biaett and Irving H. Bahde, Jr., Guardians ad Litem for Eugene Grant, et al., Appellants,

v.

Herbert MALLAMO, Individually and as Administrator with the Will Annexed of the Estate of Joseph T. O'Brien, Deceased, et al., Appellees.

No. I CA–CIV 1951.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 26, 1972.

Rehearing Denied Dec. 28, 1972.

See 504 P.2d 507.

Review Denied Feb. 6, 1973.

Biaett & Bahde by Kenneth Biaett, Phoenix, for appellants.

Herbert Mallamo, Phoenix, for appellee Mallamo.

John W. Rood, Phoenix, for appellees Minne & Sorenson and Jack C. Cavness.

Jennings, Strouss & Salmon by Richard L. Lassen, Phoenix, for appellee Great Western Bank.

JACOBSON, Judge.

This appeal raises the question as to who shall bear the brunt of attorney's fees incurred in various legal disputes involving the probate and administration of several estates.

In this much litigated probate and guardianship proceedings,[1] the courts are apparently hearing the last dying gasps of this extended controversy.

Caroline Brandt O'Brien died in February, 1964, being survived by two natural children, Joseph T. O'Brien and appellant Suzanne Bates, and two minor adopted children, Robert George O'Brien and Thomas Henry O'Brien. The first and primary dispute centered around the probate of the Caroline Brandt O'Brien Estate. In that proceeding Joseph T. O'Brien offered for probate a purported last will and testament of Caroline, which in essence distributed the bulk of her estate of more than $1,000,000 to her two natural children and left only a small bequest to the two adopted children. Prior to the purported will being admitted to probate, a will contest was instituted by the guardian of the estate of the two adopted minors. In that litigation Joseph T. O'Brien, as proponent of the will, was represented by appellee, Herbert Mallamo, attorney at law, and the guardian of the two adopted children, as contestant, was represented by the firm of Minne & Sorenson and Jack C. Cavness, attorneys at law. This will contest resulted in a determination by jury that the offered will was invalid, having been executed under the undue influence of Joseph T. O'Brien. The effect of this ruling was that Caroline Brandt O'Brien died intestate. The upshot of this decision was that the two natural children and the two adopted minor children shared alike in the proceeds of Caroline's estate.[2]

Prior to the distribution of Caroline's estate, Joseph T. O'Brien died and Herbert Mallamo was appointed as administrator with will annexed of Joseph's estate. Appellants Suzanne Bates and her four minor children who appeared by their guardian ad litem, Kenneth Biaett and Irving H.

Bahde, Jr., are the principal beneficiaries of the Joseph T. O'Brien estate.

During the course of the probate proceedings of the estate of Joseph T. O'Brien, Herbert Mallamo, on March 8, 1971, timely filed a creditor's claim in that estate in the sum of $90,000 for attorney's fees incurred in representing Joseph T. O'Brien during his life. Over the objections of the appellants, the trial court allowed this claim on September 28, 1971.

The law firm of appellees Minne & Sorenson and Jack C. Cavness also presented a claim for approximately $125,000 in attorney's fees and approximately $10,000 in costs, first to the estate of Caroline Brandt O'Brien or in the alternative against the guardianship estate of the two adopted minors. Over appellants' objections the trial court allowed this claim in full as a charge against the estate of Caroline Brandt O'Brien. For the purposes of trial and of appeal the contested issues in the two probate estates and the guardianship estates were consolidated.

This appeal questions the propriety of both claims for attorney's fees against the two estates involved. Since two different legal problems are presented, this opinion shall separate the claims involved.

## THE MINNE & SORENSON AND JACK C. CAVNESS CLAIM

As the previous recitation of facts indicates, the claim of Minne & Sorenson and Jack C. Cavness (hereinafter collectively referred to as Cavness) arose out of legal services performed by them on behalf of the guardianship estate of the two adopted minor children of Caroline Brandt O'Brien in prosecuting the will contest involved in Caroline's estate. The trial court as a result of the hearing on the objections to the Cavness claim specifically found that the will contest prosecuted by Cavness was of

1. *See* O'Brien v. Superior Court, 102 Ariz. 570, 435 P.2d 44 (1967); O'Brien v. Superior Court, 104 Ariz. 136, 449 P.2d 601 (1969); O'Brien v. Superior Court, 104 Ariz. 588, 457 P.2d 265 (1969); In re Guardianship of O'Brien, 11 Ariz.App. 343, 464 P.2d 663 (1970).

2. An appeal from this determination was filed, but was subsequently dismissed by stipulation and this judgment is final.

"direct benefit to the Estate of Caroline Brandt O'Brien."

Appellants do not question in this appeal, the reasonableness of the fees or expenses involved in this claim but urge that this claim cannot be paid from Caroline's estate.[3]

The question thus framed by this appeal is:

"Under the case law and statutes of the State of Arizona, may the trial court order payment by the estate of attorney's fees incurred on behalf of the successful contestants in a will contest instituted prior to admission of the will to probate where such contest was of direct benefit to the estate."

In our opinion, this question must be answered in the negative. While appellants specifically question the evidentiary basis for the trial court's determination that the will contest was a "direct benefit" to Caroline's estate, in our opinion this determination is immaterial to the legal issues involved and we therefore assume, for the purposes of this appeal that this finding is factually supportable.

■■■ The general rule, insofar as collection of attorney's fees by a successful litigant from the loser, is that such fees are not allowed except when expressly provided for by either statute or contract. Colvin v. Superior Equipment Company, 96 Ariz. 113, 392 P.2d 778 (1964). This rule has been amplified in probate proceedings to provide that:

" '[N]o allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate.' "

In re Balke's Estate, 68 Ariz. 373, 379, 206 P.2d 732, 736 (1949).

This rule holds true even though the estate may have substantially benefited from the attorney's services. Pintek v. Superior Court, 81 Ariz. 255, 304 P.2d 392 (1956).

Appellants have also cited to this court the case of In re Estate of McConnell, 101 Ariz. 538, 421 P.2d 895 (1966), which holds that attorney's fees are not allowable to a successful party in a will contest, after probate, under the provisions of A.R.S. § 14–376. Here, there is no question that Cavness had no contract with the Estate of Caroline Brandt O'Brien or that Cavness performed services for the executor or administrator of that estate so as to bring into play A.R.S. § 14–661, subsec. B (payment of attorney's fees employed by an administrator or executor).

■■■ Cavness contends, however, that Balke, Pintek and McConnell all involve the interpretation of statutes which come into play after probate has started and therefore are not authority for the payment of attorney's fees in a setting where the will contest was instituted prior to the will being admitted to probate. From this premise, Cavness argues that a will contest instituted before probate under Article 4, Sections 14–351 et seq. of the Arizona Revised Statutes, which contain no statutory language as to costs or attorney's fees, must be controlled by equitable principles which in a proper case allow the successful contestant in a will contest to be paid their attorney's fees from the estate. Cavness has cited to this court respectable authority from other jurisdictions in support of this contention. See Mutual Life Insurance Co. of New York v. Ginsburg, 228 F.2d 881 (3rd Cir. 1956); In re Turton's Estate, 34 Misc.2d 917, 229 N.Y.S.2d

---

3. Appellee, Great Western Bank, substitute guardian of the two adopted minors, does question the reasonableness of the Cavness fee. However, Great Western Bank has failed to file a cross-appeal as to this portion of the trial court's judgment and hence we are precluded from considering this contention. Christian v. Cotten, 1 Ariz.App. 421, 403 P.2d 825 (1965); Barth v. A. & B. Schuster Co., 25 Ariz. 546, 220 P. 391 (1923).

692 (1962); In re Caruso's Will, 18 N.J. 26, 112 A.2d 532 (1955); In re Wilmott's Estate, 66 So.2d 465 (Fla.1953); In re Faling's Estate, 113 Or. 6, 228 P. 821, 231 P. 148 (1924).

However, in espousing this contention in Arizona, Cavness is immediately faced with two impregnable legal barriers, either one of which bars the way to recovery from the estate.

The first of these is that set forth in the general rule previously stated in this opinion—in the absence of statute or contract attorney's fees may not be awarded a successful litigant. Having admitted that the statutory procedure for contest of a will prior to probate contains no provision for payment of attorney's fees and no contract exists, this rule comes into play. A narrowly drawn exception to this rule has been carved out in Arizona where a party by his own efforts and expense through successful litigation, has preserved, protected or increased a common fund or property or has created a fund in which others may share. In such a case, attorney's fees may be paid the successful litigant from such a fund. Steinfeld v. Zeckendorf, 15 Ariz. 335, 138 P. 1044 (1914), aff'd, 239 U.S. 26, 36 S.Ct. 14, 60 L.Ed. 125 (1915); 49 A.L.R. 1149. Such an exception, if viable in probate proceedings, is of no help to Cavness, as the fund which was created was the distributive share of the two adopted minors from the Caroline Brandt O'Brien estate, and no one questions the right of Cavness to be paid attorney's fees from this source.

The second barrier facing Cavness is that the probate court is strictly a creature of statute. While the probate court may utilize equitable principles in deciding matters which fall within its probate jurisdiction, In re Estate and Guardianship of Vermeersch, 15 Ariz.App. 315, 488 P.2d 671 (1971), it is limited to statutorily prescribed powers and procedures. In re Estate and Guardianship of Vermeersch, *supra*; Pintek v. Superior Court, *supra*. Put another way, since the statutes do not grant the probate court power to award attorney's fees in will contests initiated prior to probate, it is without the jurisdiction of the court to exercise any equitable principles in this area.

For the foregoing reasons, we hold that the probate court lacked jurisdiction to award Cavness attorney's fees to be paid from the Estate of Caroline Brandt O'Brien and this portion of the probate court's order is reversed.

## THE MALLAMO CLAIM

In order to adequately understand appellant's contention concerning the claim filed by Attorney Mallamo in the Joseph T. O'Brien Estate, it is necessary to set forth additional factual background.

Joseph T. O'Brien died on May 26, 1970, and on November 4, 1970, Mallamo was appointed administrator with will annexed of this estate. On March 8, 1971, and within the time allowed for filing creditors' claims, Mallamo filed a creditor's claim, supported by an itemized hourly breakdown, for $90,000 in attorney's fees incurred in the representation of Joseph T. O'Brien during his lifetime. The creditor's claim indicates that the fees incurred were for a broad spectrum of representation including the will contest in Caroline's estate, guardian matters of the two adopted children of Caroline, a divorce action between Joseph T. O'Brien and his wife, and other litigation involving Joseph T. O'Brien individually and unrelated to the estate matters. The hourly breakdown supporting the creditor's claim indicates that Mallamo was able to support 981 hours actually spent on behalf of his client and estimated 600 hours actually spent on Joseph T. O'Brien matters for which no time records were kept. The representation of Joseph T. O'Brien by Mallamo commenced on April 21, 1964, and continued until the date of Joseph's death on May 26, 1970. During this six-year period of time no demand for payment of attorney's fees was made by Mallamo, he testifying that his understanding with

his client was that Mallamo's fee was to be paid upon distribution of Caroline's estate, Joseph T. O'Brien having no personal funds, to the knowledge of Mallamo, out of which attorney's fees could be paid.

Mallamo's creditor's claim was formally presented to the probate judge for approval on March 9, 1971, who set March 19, 1971, as the date for hearing expert testimony as to the amount of the claim and any objections thereto. On the date set for hearing the court was of the opinion that the attorney representing the guardian of the adopted minor children might have a conflict of interest problem and directed the guardian to appoint special counsel to represent the adopted minor children in this matter. At this time, the court had before it objections to the Mallamo claim filed by appellant Suzanne Bates. The court further instructed Mallamo to file a creditor's claim in the Caroline Brandt O'Brien Estate for fees Mallamo incurred in representing Joseph T. O'Brien in that estate. This request was complied with. The court continued the hearing on the creditor's claim until April 7, 1971.

On April 7, 1971, all attorneys representing the various interests of the parties were present at which time the court directed Biaett & Bahde, as guardians ad litem of the minor children of Suzanne Bates, to file objections to the Mallamo claim. In addition, time was allowed the Valley National Bank and the guardian of the adopted minor children to file objections. Further, the Court consolidated the hearing on the fees of Cavness with the fees of Mallamo and reset trial on all these issues for May 3, 1971.

On May 3, 1971, evidence as to all the claims for attorneys fees was presented, including expert testimony that Mallamo's fees incurred on behalf of Joseph T. O'Brien had a reasonable value of between $75,000 and $150,000. The court gave the parties until May 25, 1971, within which to file legal memoranda supporting their respective positions at which time the matter would be deemed submitted. On Sep-

tember 28, 1971, the court ruled upholding the validity of the Mallamo claim against the Joseph T. O'Brien Estate in the sum of $90,000.

Appellants raise three issues concerning the validity of the Mallamo claim:

(1) When a creditor's claim is presented to a judge for allowance or rejection and the judge fails to act thereon within ten days, may the judge thereafter, at a subsequent time, allow and approve said claim and order it paid from the estate?

(2) Is any claim for fees for legal services rendered by Mallamo more than three years prior to the presentation of the creditor's claim barred by the statute of limitations, and,

(3) Are the fees claimed by Mallamo reasonable?

The basis of appellants' first argument is the applicability of A.R.S. § 14–564 to the time sequences involved in the Mallamo claim.

A.R.S. § 14–564 provides in pertinent part that:

"A. When a claim is presented to the executor or administrator he shall endorse thereon its allowance or rejection, and the day and date thereof. If the claim is allowed he shall present it to the judge for approval, who shall hear evidence concerning its validity, and shall endorse upon it his allowance or rejection and the date thereof.

"B. If the executor or administrator or the *judge* refuses or neglects for ten days after the claim has been presented to him to endorse on the claim its allowance or rejection the refusal or neglect shall be deemed a rejection." (Emphasis added.)

It is appellants' contention that subsection B of the above quoted A.R.S. § 14–564 applies to a creditor's claim filed by the personal representative under A.R.S.

§ 14–568. This statute provides in pertinent part that:

"If the executor or administrator is a creditor of decedent, his claim shall be presented for allowance or rejection to the judge of the court. Allowance of the claim by the judge is sufficient, and it shall be paid as other claims. If the judge rejects the claim, an action may be commenced thereon against the estate by claimant, and summons may be served upon the judge who may appoint an attorney at the expense of the estate to defend the action."

From this, appellants argue that the failure of the probate court to act upon the Mallamo claim within ten days from either March 9, 1971, (the date the Mallamo claim was first presented to the judge) or May 25, 1971 (the date the court deemed the matter of the Mallamo claim submitted) resulted in an automatic rejection of the claim as a matter of law and brought into play the provisions of A.R.S. § 14–579, which provides in part that:

"When a claim is rejected either by the executor or administrator or the judge, the holder may bring an action thereon against the executor or administrator within three months after the date of its rejection, if it is then due, or within two months after it becomes due, otherwise the claim shall be forever barred."

The argument then continues by pointing out that Mallamo did not institute an action within the three months' period following the automatic rejection and therefore the claim is now barred.

Appellants' basic premise, upon which the foregoing argument is based, is that the automatic ten-day rejection period set forth in A.R.S. § 14–564, subsec. B is applicable to an administrator-creditor's claim filed pursuant to A.R.S. § 14–568.

We first note that A.R.S. § 14–568 by its terms contains no time limitations comparable with A.R.S. § 14–564, subsec. B

within which the judge must act. Nor for that matter are there any time limitations contained in A.R.S. § 14–568 in which the personal representative must file his claim or must bring his suit against the estate where the claim has been rejected.

California, from where the bulk of the Arizona Probate Code was taken, has construed its administrator-creditor's claim statute as encompassing the procedural provision dealing with general creditors' claims. In re Roberts' Estate, 49 Cal.App.2d 71, 120 P.2d 933 (1942). Arizona has followed this interpretation by holding that a creditor's claim of an executor not filed within the statutory period for filing general creditors' claims was barred. In re Estate of Elerick, 11 Ariz.App. 559, 466 P.2d 778 (1970). The principle to be gleaned from these decisions is that a creditor's claim filed by an administrator or executor is to be treated in the same manner as a creditor's claim filed by any other creditor of the estate, with the exception that the claim of the administrator or executor is first presented to the judge for approval or disapproval rather than giving the power of approval to a party who is also advocating the claim.[4] The obvious purpose of such an exception is to protect both the estate and the personal representative in his accounting.

A.R.S. § 14–564, subsec. B by its express terms makes the ten-day limitation within which to act applicable to a judge in approving or rejecting an ordinary creditor's claim, the operative language being:

"If . . . the judge refuses or neglects for ten days after the claim has been presented to him to endorse on the claim its allowance or rejection the refusal or neglect shall be deemed a rejection."

The legislature, for whatever reason, obviously intended that insofar as general creditor's claims were concerned, the same

---

**4.** Another procedural difference is that if the claim is rejected the personal representative's suit is against the estate and service is made on the judge who rejected the claim. A.R.S. § 14–568.

time limitations apply to the actions of the judge in approving or rejecting the claim as apply to the administrator or executor. Having set such a time limitation on the judge in acting on general creditor's claims, we see no reason for excepting the judge from the same time limitation when acting on a creditor's claim filed by an administrator or executor. We therefore hold that the provisions of A.R.S. § 14–564, where applicable, apply to creditor's claims filed by an administrator or executor pursuant to A.R.S. § 14–568.

Does this mean, however, that if a claim is contested under A.R.S. § 14–564 the ten-day automatic rejection period applies? We believe not. To adequately understand the procedure utilized by appellants in this case, and to arrive at a correct interpretation of A.R.S. § 14–564, the legislative history of this section and its judicial interpretation must be explored. The predecessor of A.R.S. § 14–564 first appeared as § 1745 of the Revised Statutes of 1901. This section at that time provided:

"When a claim, accompanied by the affidavit required in this chapter, is presented to the executor or administrator, he must indorse thereon his allowance or rejection, with the day and date thereof. If he allows the claim, it must be presented to the probate judge for his approval, *who must, in the same manner, indorse upon it his allowance or rejection.* If the executor or administrator or the judge refuse or neglect to indorse such allowance or rejection for ten days after the claim has been presented to him, such refusal or neglect shall be equivalent to a rejection on the tenth day . . . ." (Emphasis added.) R.S.Ariz.Terr. Tit. 17, Ch. 6, § 1745 (1901).

This identical language was incorporated into Section 885 of the Revised Statutes of 1913. In interpreting this particular section, the Arizona Supreme Court in the case of the Estate of Tamer, 20 Ariz. 228, 179 P. 643 (1919), held that under this section of the 1913 code, heirs of a decedent

had no standing to appear and contest the allowance of the creditor's claim by either the personal representative or judge in the first instance or upon its original presentation. The rejection or approval in the first instance was done by the judge completely *ex parte.* The court went on to hold that the heirs were not jeopardized by such an *ex parte* decision for they had standing to object to the allowance of the claim upon rendition of the administrator's accounting which contained the contested claim.

In this setting, the ten-day expeditious handling of creditors' claims as it applied to a judge made sense, for the judge's act in rejecting or allowing the claim was subject to more serious subsequent deliberation either by a creditor's suit if the claim was rejected or by objections to the accounting of the administrator if allowed.

However, in 1928, the immediate predecessor of A.R.S. § 14–564 was amended to read in pertinent part as follows:

"When a claim is presented to the executor or administrator, he shall indorse thereon his allowance or rejection, with the day and date thereof; if he allows the claim, he shall present it to the judge of the court for his approval, *who may hear evidence concerning its validity,* and who shall indorse upon it his allowance or rejection and the date thereof . . . ." (Emphasis added.) R.C.A. § 3987 (1928).

The ten-day "refusal or neglect" language was retained by the 1928 provision.

In our opinion, the underlined portion of this amendment was intended to overrule the holding in Estate of Tamer, *supra,* and to give interested parties the opportunity to contest the allowance of a creditor's claim upon its presentation without waiting to attack the validity of a claim until an accounting was filed by the administrator or executor.

The statutory language of this section has been carried down to A.R.S. § 14–564, with the exception that upon approval by the personal representative and presentment, the judge "shall" hear evidence con-

cerning its validity rather than he "may" hear such evidence.

The appellants in this case exercised their rights granted by the 1928 amendment and prior to the expiration of the ten-day period filed objections to the Mallamo claim thereby contesting the allowance of this claim. Upon these objections being filed, the probate court put into motion the machinery of judicial due process in order to be adequately informed, and to adequately protect the various and sundry interests of the affected parties. That the judge was required to do so is strengthened by the fact that his action on this claim in either rejecting or allowing it is made a final order subject to appeal. A.R.S. § 12–2101, subsec. J, par. 5.

Did the legislature intend, in a contested setting, that the court should allow adequate representation of parties, hear evidence concerning validity, inform himself of the factual and legal issues involved, and make an appealable order, all within ten days? The single decision which we have found dealing with a similar statutory provision as applied to a judge has held that the ten-day automatic rejection period does not apply in a contested setting. Miller v. Lewiston Nat. Bank, 18 Idaho 124, 108 P. 901 (1910). Such a ruling is in keeping with logic and reason. If the ten-day automatic rejection period makes sense where the court is acting *ex parte*, and he is given an opportunity to subsequently exercise more considered judgment, it makes no sense to apply such a stringent time limitation in an advocacy hearing where the decision of the court is final. We are admonished to construe legislative enactments in such a manner as not to render meaningless any statutory language. Wiseman v. Arizona Highway Dept. ex rel. Campbell, 11 Ariz.App. 301, 464 P.2d 372 (1970); State Bd. of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P. 2d 348 (1958). To apply the automatic ten-day rejection provisions of A.R.S. § 14–564 to a contested hearing before a judge, would, in our opinion, render meaningless and futile the provision of that statute requiring the judge "to hear evidence concerning its validity."

We therefore interpret A.R.S. § 14–564, subsec. B as being inapplicable to a case where objections to a claim have been filed with the judge in the first instance and the claim is contested. We adopt the same reasoning in holding that an administrator-creditor's claim filed under the provisions of § 14–568, where that claim is contested before the court, does not bring into play the automatic ten-day rejection period of A.R.S. § 14–564, subsec. B.

Appellants next contend that a major portion of the Mallamo claim is barred by A.R.S. § 12–543 (the alleged applicable statute of limitations) which in part provides:

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:

"1. For debt when the indebtedness is not evidenced by a contract in writing."

As to whether the probate court correctly overruled appellants' objections on this ground, the determinative issue is when did Mallamo's claim for services accrue.

The general rule insofar as to when a cause of action accrues for attorney's fees appears to be that expressed in the Annotation Limitations—Compensation of Attorney, 60 A.L.R.2d 1008, 1009 (1958):

"Generally speaking, the statute of limitations commences to run against a claim for legal services at the time the employment was terminated. More particularly, where continuous services are rendered over an extended period under an agreement, express or implied, not fixing the time of payment, the claim is

**384**

not subject to the running of the statute of limitations until the right to the fee accrues, which is when the services are completely rendered, or the attorney-client relationship is ended." (See cases cited 60 A.L.R.2d 1010, 1011).

■ From our reading of the evidence we are convinced that the probate court correctly determined that the services rendered by Mallamo for Joseph T. O'Brien were continuous in nature and no agreement fixed the time for payment of these fees, other than when the Estate of Caroline Brandt O'Brien was distributed. Joseph T. O'Brien died prior to this distribution. From this evidence the probate court could and did determine that the statute of limitations did not begin to run on Mallamo's claim for attorney's fees until the death of his client on May 26, 1970. Mallamo had filed his claim for services in the estate on March 9, 1971, and the same being allowed on September 8, 1971, well within the three-year limitation period, the claim was not barred by the statute of limitations. *See* A.R.S. § 14–566.

■ Appellants' next contention is that the Mallamo fee allowed by the court is unreasonable. Suffice it to say that our review of the record reveals that there was adequate evidence to support the probate court's determination that a fee in the sum of $90,000 for the services rendered by Mallamo for Joseph T. O'Brien was reasonable. This court shall not substitute its opinion for that of the probate court in whose discretion such a determination is vested. In re Westfall's Estate, 74 Ariz. 181, 245 P.2d 951 (1952).

For the foregoing reasons, the judgment of the probate court insofar as the Minne & Sorenson and Jack C. Cavness claim is concerned, is reversed. The judgment of the probate court insofar as the Mallamo claim is concerned is affirmed.

Affirmed in part; reversed in part.

HAIRE, C. J. Division 1, and EUBANK, J., concur.