647 P.2d 1153

In the Matter of the ESTATE OF Sadie R. WRIGHT, Deceased.

Ellis William WRIGHT, Jr., Heir of Sadie R. Wright, Deceased, Appellant,

v.

James R. HERON, Personal Representative of the Estate of Sadie R. Wright, Deceased, Appellee.

No. 2 CA–CIV 4134.

Court of Appeals of Arizona, Division 2.

March 30, 1982.

Rehearing Denied May 13, 1982.

Review Denied June 15, 1982.

Frank C. Brophy, Jr., Phoenix, for appellant.

Culbert & De Ninno by Amos Culbert, Globe, and Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Herbert Mallamo, Phoenix, for appellee.

## OPINION

BIRDSALL, Judge.

This is an appeal by one of the heirs of Sadie R. Wright, deceased, from the allowance of fees to the personal representative and attorneys in the closing of the estate. We affirm except for one issue.

Sadie R. Wright died intestate on March 26, 1965, leaving her husband, Ellis W. Wright, Sr. and three children, appellant Ellis W. Wright, Jr., Eleanor W. Kempf, and Claude C. Wright, surviving her. Ellis, Sr. died August 16, 1969, after giving his community one-half interest in the estate to the three children. Eleanor also died and that interest in the estate is now represented by her daughter, Claudia Kempf Charles, as Executrix of her estate.

Claude C. Wright, the only child then residing in Arizona, was first appointed as Administrator. He employed Sam Lazovich of Globe as attorney for the estate.

The inventory and appraisal filed in 1966 listed 66 separate parcels of real estate having a value of $62,978 for the decedent's community one-half interest. Many of the properties had been purchased at tax sales. Only one parcel had an appraised value over $3,250 for the one-half interest. Some of the parcels were appraised at no value and the majority were valued under $1,000. The appraised value of the decedent's one-half interest in the personal property was $3,822. There was little activity in the estate for over ten years. Some properties had been sold, but no accountings had been made. In 1977 attorney Herbert Mallamo was substituted for Mr. Lazovich, who was reducing his law practice for health reasons.

Actually, Mallamo had been performing legal services for the estate, i.e., for Claude as personal representative, since 1975. He was initially retained by Eleanor to represent her in separate litigation with the appellant. That lawsuit involved a claim that Eleanor had agreed to sell her interest in the estate property to Ellis, which required Mallamo to learn everything he could about the estate. As a result of his contacts with Claude and the estate, he began advising Claude and, although not formally made attorney of record, he was in reality the only attorney actively representing the estate for over two years.

In 1978, the appellant, represented by attorney Jerry DeRose of Globe, successfully petitioned for the removal of Claude as

personal representative.[1] The appellant and James R. Heron of Globe were appointed in his place. About four months thereafter, the appellant was removed and Heron continued as sole representative. In November, 1978, at Mallamo's suggestion, Heron retained Globe attorney Amos Culbert to represent the estate, since Mallamo was in Phoenix and could not often be present in Globe. According to court records, DeRose continued to represent the appellant while Mallamo represented Eleanor and sometimes is shown to have appeared for Claude.

The transcript of the hearing in June, 1978, when the appellant and Heron were appointed, contains the following with reference to the sale of the real properties which were owned one-half by the estate and one-sixth each by the three children.

"THE COURT: Gentlemen, we've discussed the matter somewhat in chambers and I have tried to impress on the parties that there should be some manner where there is—someone has authority to handle the interests of the parties, the property they already own in the United States and so that someone can go ahead and sell the property is necessary. And I think we have reached an agreement on that, have you not, gentlemen?

MR. DE ROSE: Yes, Your Honor.

MR. MALLAMO: Yes, Your Honor.

THE COURT: Do you want to state it for the record, Mr. De Rose?

MR. DE ROSE: Your Honor, we have agreed to enter into a stipulation that Mr. Heron and Mr. Ellis Wright will be appointed as co-personal representatives, that they shall have the authority to sell property subject to confirmation of the court, and that the other parties, all the other interests will concur in their actions subject to confirmation of the court.

THE COURT: In other words, that the personal representatives will have that authority—

MR. DE ROSE: Yes.

THE COURT: —subject to the confirmation of the court?

MR. DE ROSE: Yes, Your Honor."

The appellant later reneged on this agreement and was cited and ordered to perform. If he did not comply, the court ordered the estate representative to execute necessary title documents on his behalf, a procedure which later became necessary.

Heron proceeded to liquidate the entire estate over a period of about two years—at least 17 separate sales were made exceeding $300,000 in total price paid or owing from purchasers. Several sales involved multiple parcels as listed on the inventory. Each sale appears to have been made subject to the approval of the court. Notice of the time fixed for hearing the petition for confirmation of each sale was given to the appellant and each sale was approved by the court. In addition, sales of personal property brought approximately $30,000 into the estate. The total gross estate, including the individuals' one-half of the properties sold, reflected by the final account, was over $366,000. This figure included rental income received from some of the properties before their sale.

In his final accounting, the personal representative sought approval of the following allowances, to each of which the appellant objected:

4. Attorney's fees and costs due HERBERT MALLAMO for serving as the attorney for Personal Representative CLAUDE C. WRIGHT and for services rendered the Estate after resignation of CLAUDE C. WRIGHT as Personal Representative. $20,000.00

5. Attorney's fees and costs due AMOS CULBERT for serving as the attorney for Personal Representative JAMES R. HERON. FEES $15,000.00 COSTS $ 168.80

6. Personal Representative's fee and costs due JAMES R. HERON for serving as the Personal Representative of the Estate from June 23, 1978 to date. $52,274.69

He also sought approval of a payment of $4,317.50 attorney's fees due Jerry DeRose for the representation of appellant "as an heir in connection with this probate proceeding."

A two-day hearing held on the appellant's objections resulted in an order allowing

---

1. The new probate code had been enacted effective January 1, 1974. One of the changes was in the title of the administrator, which became "personal representative."

$14,000 to Mallamo, $40,207.69 to Heron and the requested amount to Culbert, i.e., $15,-168.80. In that order approving the Final Account, the court made the following findings:

"(1) That in the administration of this Estate, it was necessary and required that the Personal Representative pay the debts of the community consisting of SADIE R. WRIGHT and her surviving spouse, ELLIS WILLIAM WRIGHT, and to collect its assets, perform its obligations, liquidate and administer upon the whole of said community property.

(2) That the cost, expenses and fees in administering the community property should be borne by the whole of the community.

(3) That the undivided community one-half interest owned and possessed by ELLIS WILLIAM WRIGHT; and by him conveyed to ELLIS WILLIAM WRIGHT, JR., ELEANOR WRIGHT KEMPF, now ELEANOR WRIGHT MACY, deceased, and CLAUDE C. WRIGHT, share and share alike, was and is chargeable with a pro rata share of the cost and expense in administering said community property.

(4) That JAMES R. HERON administered the whole of the community property on hand on date of his appointment as Personal Representative and has rendered services to and for the benefit of said Estate and to and for the benefit of these interested therein, to-wit: ELLIS WILLIAM WRIGHT, JR., ELEANOR WRIGHT MACY, deceased, and CLAUDIA CHARLES, Administratrix of the Estate of ELEANOR WRIGHT MACY, deceased, and CLAUDE C. WRIGHT, to the reasonable value and amount of $40,-207.69.

(5) That HERBERT MALLAMO rendered legal services to CLAUDE C. WRIGHT as Personal Representative and JAMES R. HERON as Personal Representative herein, to and for the benefit of said Estate and the whole of the community property administered therein, to the reasonable value of $14,000.00, and his share of the attorney's fees shall be apportioned in that amount.

(6) That AMOS CULBERT rendered legal services and advanced costs to JAMES R. HERON as Personal Representative herein, to and for the benefit of said Estate and the whole of the community property administered therein, to the reasonable value of $15,168.80, and his share of the attorney's fees and costs shall be apportioned in that amount."

The record supports these findings and we will not disturb them on appeal.

■ Citing *In re Foreman's Estate*, 99 Ariz. 147, 407 P.2d 102 (1965), the appellant contends that only the decedent's community interest in the gross estate should be subject to expenses of administration since the community debts were insignificant. *Foreman* arose under our old probate code which provided for an executor's fee based on a percentage of the value of the probate estate. Former A.R.S. § 14–662. The Supreme Court held that:

"If there are no community debts or where they are insignificant in comparison to the community assets on hand the interest of the surviving spouse should not be subject to the expenses of administration, where it does not benefit the survivor's estate." 99 Ariz. at 150, 407 P.2d at 105.

Our new probate code does not contain any provision for a fee based upon a percentage of the estate. Rather, the court is to review the reasonableness of the compensation for any person employed by the personal representative, and the propriety of such appointment. A.R.S. § 14–3721. *See Also* A.R.S. § 14–3720 (authorizing reasonable attorney fees for defending or prosecuting any action on behalf of the personal representative). Pursuant to A.R.S. § 14–3721, the court is also charged with the duty of reviewing the reasonableness of the compensation determined by the personal representative for his own services. Thus the trial court was obliged to determine the value of the services rendered on considerations of necessity and reasonableness. *In re Smith's Estate*, 131 Ariz. 190, 639 P.2d 380 (1981).

Even under the *Foreman* language the trial court could properly consider the value of the entire Wright estate. In reality, the administration of the estate involved not only the community share of the decedent, Sadie, but also the other one-half given by her surviving spouse to the three heirs. Thus the court was considering an estate having a value of $330,000, not the $66,000 as originally appraised.

The appellant argues that the total fees of $72,000 [2] are disproportionate, even considering the total value of the estate as finally determined, i.e., $330,000. We agree. Compensation in such a disproportionate amount should be allowed only if extraordinary services were necessarily performed. *See In re Elerick's Estate*, 11 Ariz. App. 559, 466 P.2d 778 (1970); *Feffer v. Newman*, 17 Ariz.App. 273, 497 P.2d 389 (1972); *Busenbark v. Smith*, 55 Ariz. 1, 97 P.2d 533 (1940); *In re O'Reilly's Estate*, 27 Ariz. 222, 231 P. 916 (1925). Does the record show the necessity and performance of extraordinary services to support such nominally disproportionate fees? We find that it does.

This was an unusually complicated probate matter. At the time Mallamo entered the proceeding, the estate records were contained in several cardboard boxes, no accountings had been made, properties had been lost through tax sales, some improved parcels were liabilities rather than assets since the dilapidated condition of the improvements made them dangerous; rents and dividends had been collected by the surviving spouse; no tax returns had been filed. The sales were all advantageous to the estate and the heirs from the standpoint of expenses, no commissions were charged (Heron was a real estate broker), and the sales were all at current appraised value. In addition to the many other problems encountered, the appellant engaged in obstructionist activities which delayed the efficient progress of the administration. For example, when acting as co-administrator, he refused to sign checks; there was trouble over the location of the estate bank account; he would not cooperate with Mr. Heron. All of this led to his removal by the trial court, after a contested hearing—an extreme measure.

Mallamo spent a total of approximately 365 to 450 hours on estate matters. Of this time not over 100 hours was spent on the litigation in which he represented Eleanor. After Eleanor died it was necessary to arrange for ancillary probate of her estate, which he did.

We are mindful of the holding of *In re Balke's Estate*, 68 Ariz. 373, 379, 206 P.2d 732 (1949) that:

> "The general rule is that no allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate." (quoting 79 A.L.R. 522)

This rule holds true even though the estate may have benefited substantially from the attorney's services. *Pintek v. Superior Court*, 81 Ariz. 255, 304 P.2d 392 (1956); *In re Estate of O'Brien*, 18 Ariz.App. 375, 502 P.2d 176 (1972). These cases, and other authorities relied on in those opinions, all involve the payment of fees to attorneys who are not employed by the legal representative of the estate and are therefore inapposite. In this case attorney Mallamo was employed by the personal representative, although his employment came about because he was initially retained by one of the heirs. The trial court apparently considered only his services to the administrator, since it reduced the fee originally requested from $20,000 to $14,000. Implicitly, the court reduced the fee requested by disallowing the services performed during the times Mallamo was representing individual heirs. The evidence supports this decision.

Heron recorded time of 3,212 hours as administrator of the estate—he was spending almost full time on the work

**2.** $2,700 was paid to Lazovich.

necessary for the rental and ultimate sale of all the estate properties. The allowance of extraordinary fees to a personal representative is a matter within the discretion of the trial court. *In re Elerick's Estate, supra.* The reasonableness of compensation for the attorneys representing the personal representative is peculiarly within the knowledge of the probate court and will not be disturbed absent a showing of abuse of discretion. *In re Balke's Estate, supra; Busenbark v. Smith, supra.*

The appellant does not contend on appeal that the compensation allowed for attorney Culbert is excessive. We find the allowances for Heron and Mallamo are supported by the record.

The last issue which we must consider is the court's approval of the payment of attorney's fees to attorney DeRose for services to the appellant, to be deducted from appellant's distributive share of the estate. In order to understand the nature of this issue we must detail the procedure by which this payment was ordered.

On July 11, 1980, DeRose filed in the probate proceeding a "petition for authorization for payment of attorney's fees." In that petition he recited that he had performed legal services in connection with the probate on behalf of the appellant, heir of the decedent. He attached a letter written by him to attorney Culbert, with a copy to appellant, in which he said:

"I have talked with Mr. Wright and he advised me that my fees will hereinafter come out of his share of the estate. I will therefore be transmitting statements to you and if any disbursements are made to the devisees he has agreed that my fees shall be paid from his shares."

The petition shows copies mailed July 14th to the appellant and Culbert. No date was set for hearing the petition and no objections were filed. On July 21, the court ordered that the estate pay the attorney fees out of the distribution in accordance with the exhibit attached to the petition (presumably DeRose's statement).

In the petition for approval of final account the personal representative sought approval for such payment and proposed to deduct the sum from appellant's share. The appellant filed a written objection to the payment of the fees upon several grounds, including lack of jurisdiction in the probate court.

■ We agree that the trial court had no jurisdiction in the probate proceeding to entertain the DeRose petition. The DeRose claim was a claim against an heir of the estate, not the estate itself, albeit it was for attorney fees. Proceedings for the administration of decedent's estates are purely statutory. *Sanders v. Sanders,* 52 Ariz. 156, 79 P.2d 523 (1938). No provision in the probate code authorizes the proceedings undertaken here. If the probate court has no jurisdiction, its act in excess thereof is void. *In re Alfaro's Estate,* 18 Ariz.App. 173, 500 P.2d 1161 (1972). Matters of probate do not include the determination of a claim against an heir or devisee for his portion of the estate arising subsequent to the death of the decedent. 1 Bancroft's Probate Practice 2d, § 23, p. 56 (1950).

The trial court's unsigned order regarding objections to the accounting dated February 3, 1981, contained the following paragraph relating to the DeRose claim:

"IT IS FURTHER ORDERED that any objections to the attorneys fees paid to Jerry De Rose in the sum of $4,417.50 (sic), be reserved to Ellis William Wright, Jr., to be litigated in separate action if Ellis William Wright, Jr. so desires. Any such claim for relief from the funds expended for the attorneys fees of Mr. De Rose must be filed in a separate action within 60 days of the signing of the formal account and final discharge."

Subsequent thereto, on April 6, 1981, the trial court signed and filed the order approving final account, payment of claims and expenses of administration, and decree of settlement and distribution of estate. That document shows that the amount of the DeRose claim is to be deducted from appellant's distributive share.

The court's attempt to require the appellant to file a separate action "for relief

from the funds expended for the attorney fees of Mr. De Rose" was without jurisdiction.

We affirm the order of April 6, 1981, except that portion thereof concerning the deduction of the DeRose claim in the amount of $4,317.50 from appellant's distributive share. We remand with directions to the trial court to order attorney DeRose to pay the $4,317.50 to the Clerk of the Superior Court in Gila County subject to the further orders of the trial court consistent herewith.

HOWARD, C. J., and HATHAWAY, J., concur.