Larry ORSINI, individually, and Larry Orsini Associates, Inc., Appellants, and Cross-Appellees,

v.

Donald BRATTEN and Elaine Bratten, Appellees, and Cross-Appellants.

Nos. S–700, S–701.

Supreme Court of Alaska.

Jan. 24, 1986.

James S. Magoffin, Jr., Fairbanks, for appellants and cross-appellees.

Lloyd I. Hoppner, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellees and cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

I. *Background.*

Larry Orsini of Larry Orsini Associates provided investment advice to Donald and Elaine Bratten. Thereafter the Brattens sued Orsini seeking damages for negligent misrepresentations and breach of contract. The superior court awarded the Brattens $59,276.86 in damages together with prejudgment interest. Orsini appeals certain facets of the damage award as well as the superior court's award of prejudgment interest. The Brattens cross-appeal, claiming that the damages awarded are inadequate.

In 1977, Donald and Elaine Bratten sought investment advice for money received from the sale of a motel they owned. They contacted Larry Orsini of Larry Orsini Associates, Inc., a management consulting firm whose services included "tax planning" and "investment analysis and management."

Orsini recommended investing in a purchase-lease-back of equipment (mostly furniture) with Wilmer Preising, doing business as the "Roaring 20's Hotel" in Fairbanks.[1] Orsini furnished the Brattens with a statement projecting the return on their investment with Preising. The statement indicated that an investment of $54,000 would produce a direct cash flow of $57,200 ($235,200 in rental income less the down payment, interest and other expenses) and

an indirect cash flow, consisting of tax savings of $69,985 over the seven year leaseback period. According to Orsini's calculations, the total return on the Brattens' investment would be $158,085 or 41.8 percent.

Based on Orsini's recommendation, the Brattens invested $54,000 in the Roaring 20's purchase-leaseback arrangement. Orsini prepared the Brattens' 1977 income tax return and amended their 1974 and 1975 tax returns to claim investment tax credits for those years.

In 1980, the Internal Revenue Service (IRS) audited the Brattens' 1974, 1975, and 1977 returns and determined that the Roaring 20's investment did not qualify for an investment tax credit. Under the Internal Revenue Code it is clear that the Brattens' investment does not qualify for investment tax credits.[2] Because of the disqualification, a total of $15,000 in federal credits and $1,194 in state credits was disallowed for the years 1974, 1975 and 1977. In addition, the IRS and the State of Alaska assessed $8,082 and $2,310 in interest penalties respectively. The state also assessed a failure to file penalty of $719.

According to the Brattens, in addition to his erroneous advice regarding investment tax credits, Orsini failed to consider the tax consequences of the lease rental payments the Brattens would be receiving from the Roaring 20's. Orsini does not deny that the rental income was excluded by "mistake" from the statement he furnished the Brattens.[3]

As indicated previously the Brattens then brought a tort action for negligent

---

1.′ The Brattens were also considering investing in real estate and had looked at rental units in Fairbanks and Anchorage. The Brattens discussed real estate investment with Orsini extensively. They also discussed investing in tax-exempt municipal bonds.

2. I.R.C. § 46(e)(3) (1984) allows non-corporate lessors (such as the Brattens) an investment tax credit only if the term of the lease is less than 50% of the estimated useful life of the property. Moreover, for the first 12 months after property is transferred to the lessee, the deduction allowable to the lessor must exceed 15% of the rental income produced by the property. The Roaring

20's purchase-leaseback met neither of these requirements. In addition, the leased property was neither new nor acquired from a third party and thus the investment tax credit claim violated I.R.C. Regs. 1.48–3(a)(2)(i).

3. Orsini claims that he provided the Brattens with handwritten statements of projected tax liability which corrected the rental income error made in the original statement. He was, however, unable to explain why he did not correct the original statement if he knew that it was incorrect.

misrepresentation against Orsini, claiming that as a result of Orsini's errors their total investment return was only $14,745, which was $143,340 less than the projected return of $158,085. They further claimed that had Orsini correctly projected the tax consequences of the purchase-leaseback investment, they would not have entered into an agreement with Preising and would likely have invested in Fairbanks rental property.

At trial the Brattens argued that the true measure of damages was either $143,340—the difference between what Orsini told them they would receive ($158,085) and what they claim to have actually received ($14,745), or $123,059—the difference between what they would have received had they invested in Fairbanks real estate ($137,804)[4] and what they actually received.

After a non-jury trial, the superior court entered judgment in favor of the Brattens in the amount of $59,276.86. The superior court found that the Brattens entered the purchase-leaseback agreement on Orsini's advice, that they would not have done so if Orsini had correctly projected the return on investment, and that Orsini had been negligent. Damages were awarded to the Brattens as follows:

| | |
|---|---|
| Fees billed to the Brattens by Orsini | $ 1,594.59 |
| Amount of tax credit repaid to the State of Alaska plus interest penalties | $ 4,038.00 |
| Amount of tax credit repaid to the federal government plus interest penalties for 1977 | $18,324.27 |
| "Prospective tax liability" | $35,320.00 |
| Total | $59,276.86 |

The superior court also awarded the Brattens prejudgment interest from November, 1977. Orsini's motion for reconsideration was denied and this appeal and cross-appeal followed.

## II. *The Superior Court's Award of Damages.*

On appeal Orsini argues that the superior court erred by awarding damages and prejudgment interest contrary to the undisputed evidence. However, Orsini does not dispute that part of the award constituting the fees he billed Bratten ($1,594.59) and concedes that the Brattens should be awarded $1,914 for state tax investment credits and $15,000 for federal investment tax credits that were disallowed for the years 1974, 1975 and 1977. He does challenge the "prospective tax liability" portion of the superior court's award and the award for state and federal interest penalties. The Brattens, in turn, contend that the damages awarded are inadequate.

### A. *Tax Credits Awards.*

■ The Brattens note that the $18,324.27 awarded by the superior court for the tax credits and interest penalties repaid to the federal government is only for the year 1977, even though they had to repay the IRS a total of $12,823.40 for investment tax credits and penalties that were disallowed for 1974 and 1975. They argue that the $12,823.40 should have been included in the award, and thus the trial court should have awarded at least $35,185.67, which would include the investment tax credits disallowed in all three years, plus interest penalties.

The Brattens correctly observe that there are logical difficulties with the superior court's award. Were the Brattens entitled to receive damages for the disallowance of federal investment tax credits for

4. The Brattens obtained this figure from a report prepared by their expert witness, Dr. Clifford Cox. The report set out a hypothetical alternative investment in rental property that the Brattens might have made in 1977.

Dr. Cox based his calculations on two actual Fairbanks properties containing a total of eight two-bedroom units that were purchased by someone else in 1976 and sold in 1983. Dr. Cox derived a hypothetical ten-unit property from the two actual properties by using the average unit cost. He presumed an interest rate of $10\frac{1}{4}\%$ on a 20% down payment (which he stated were the prevailing financial terms for this sort of investment in 1977), and obtained a presumed vacancy rate from a document entitled the "Community Research Quarterly" which reported vacancy rates from 1977 through 1983. Dr. Cox also considered operating expenses, a 4.5% "credit loss adjustment," and property depreciation.

1977, they also should have received damages for the 1974 and 1975 tax years. Arguably, the Brattens should receive no recovery at all for lost investment tax credits, as the investment scheme was invalid and therefore they were never entitled to the return promised them by Orsini. However, since Orsini has conceded that he must pay the Brattens $15,000 in federal and $1,914 in state lost investment tax credits, we will not consider whether these amounts are properly recoverable. Further, we agree with Orsini that the Brattens are not entitled to receive damages for interest repaid to either the federal government or to the state government. The Brattens had the use of the these monies and, presumably, were able to earn interest while they held it. Therefore, paying the interest penalties effectively cost the Brattens nothing.

### B. *"Prospective Tax Liability" Award.*

■ Orsini asserts that there "was and is no prospective tax liability." At the outset of the trial, there was concern that the Brattens might incur future tax liability if the IRS were to consider the purchase-leaseback an actual sale to Preising. However, the Brattens' own expert witness testified that even if the IRS were to treat the transaction as a sale, the tax consequences would remain unaltered. The superior court agreed with the expert's conclusion. Thus, Orsini argues that since there was no "prospective liability," the award of $35,-320 is invalid. We agree with Orsini that the $35,320 award cannot be sustained as an award for prospective liability.[5]

---

**5.** In their cross-appeal the Brattens correctly point out that since the award of $35,320 includes the disallowed 1977 tax credits, the superior court's award effectively created a "double recovery."

**6.** Damages should not be awarded on the basis of speculation, surmise or conjecture. *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978).

It is impossible to ascertain whether any building comparable to the ten-unit building Dr. Cox used for his hypothetical alternative investment even existed in 1977. It is speculative even to assume that the Brattens would have

### C. *The Brattens' Cross-Appeal.*

The Brattens argue that in assessing damages the superior court failed to take into account Orsini's error regarding the tax consequences of the lease rental income. On cross-appeal, they urge this court to award them either what Orsini promised them or what they would have received had they invested in other real estate in the Fairbanks area.

■ Orsini urges us to reject a measure of damages based on hypothetical real estate ventures that the Brattens might have invested in, but for his advice. We agree with Orsini that as a matter of law such an approach is too speculative to provide a legal basis for damages.[6]

■ Neither should the Brattens be awarded the difference between what Orsini projected and what they actually received. This is not the bargain they made with Orsini. The Brattens contracted with Orsini for investment advice. The objective or "benefit" of their bargain was to obtain accurate advice, not a guaranteed 41.8 percent return.

### *Conclusion.*

Based upon the foregoing the Brattens are entitled to recover the following items of damages: the amount of Orsini's fee ($1,594.59) plus prejudgment interest from November 1977; the amount of tax credit they were required to repay the federal government ($15,000) plus prejudgment interest from June 1982 (the time when this sum was actually repaid); the amount of

bought real estate had Orsini given them correct information on the Roaring 20's investment, since they also were investigating other possible investments, including municipal bonds.

Although not briefed or argued by the parties we note that as to the negligent misrepresentation claim, the Brattens were entitled to be placed in the position they would now be in had they received accurate advice, so long as the damages were reasonable and certain. *Transamerica Title Insurance Co. v. Ramsey*, 507 P.2d 492, 497 (Alaska 1973); Restatement (Second) Torts § 552B(2) (1977).

tax credit they were required to repay the state ($1,194) plus prejudgment interest from July 1983 (the time when the state required repayment); and the penalty the state assessed ($719) plus prejudgment interest.

The superior court's judgment is AFFIRMED in part, and MODIFIED in part in accordance with this opinion.

COMPTON, J., not participating.