OLSON, CLOUGH & STRAUMANN,
CPA'S, Respondents,

v.

TRAYNE PROPERTIES, INC., et
al., Appellants.

No. C6–85–2354.

Court of Appeals of Minnesota.

Aug. 5, 1986.

W. Scott Herzog, Minneapolis, Laurence
J. Hayes, St. Paul, for respondents.

John W. Harrigan, Minneapolis, for appellants.

Heard, considered and decided by NIER-
ENGARTEN, P.J., and LANSING and
HUSPENI, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Trayne Properties, Inc. rented
office space from Richard Clough and Dar-
rell Straumann. Prior to the expiration of
the lease, Trayne Properties vacated the
leased premises, and Clough and Strau-
mann sued for the alleged breach of the
lease. At the same time, respondent Olson,
Clough and Straumann, CPA's (OCS) sued
Trayne seeking the recovery of unpaid ac-
counting bills. Trayne Properties counter-
claimed in both actions, asserting that OCS
committed malpractice in rendering ac-
counting services for Trayne Properties,
thus causing damages justifying its vaca-
tion of the premise. The actions were con-
solidated.

The court found that Trayne Properties
had breached the lease and awarded OCS
lost rental payments. In addition, the
court found that the damages claimed by
Trayne Properties were too speculative.
Trayne appeals from the judgment. OCS
filed a notice of review of the court's find-
ing that OCS committed professional mal-
practice. The trial court's award of dam-
ages to OCS for the breach of the lease is
not before this court.

## FACTS

In October 1981 Richard Clough and Darrell Straumann, who are principals in the accounting partnership of OCS, leased office space to Trayne Properties, a business engaged in syndicating and managing real estate, and providing its investors with tax information. OCS commenced accounting work for Trayne Properties in January and February of 1983 and later agreed to complete the tax work for some limited partnerships managed by Trayne Properties by January 31, 1984. OCS claims that Trayne Properties agreed to have one of its people, Robert Snyder, available to assist them. OCS further claims that Trayne Properties agreed to stay current on its indebtedness. OCS scheduled one of its accountants, to commence work preparing partnership tax returns on December 5, 1983. Problems in the delivery of the accounting services arose in the following way.

OCS had difficulty contacting Snyder in December 1983 and January, 1984. Trayne Properties had stayed current on its indebtedness as it had agreed. OCS suspended its work from January 3 through January 19, 1984, claiming it had forewarned Trayne Properties office manager, but not the partners themselves, of this suspension.

OCS claims that during a meeting on January 16, 1984, Snyder stated that his office manager had just informed him that OCS had stopped working on the tax returns. At that meeting, Snyder signed an engagement letter with OCS whereby OCS agreed to provide accounting services for Trayne Properties and Trayne Properties agreed to pay the two outstanding bills and to pay bills for work in progress upon receipt. Trayne Properties claims both bills were paid on January 18, 1984, but OCS claims one bill was paid on that date and the other bill on January 30, 1984. OCS resumed work on the tax returns on January 19, 1984.

OCS claims it completed and returned to Trayne Properties six limited partnership returns, but that Trayne Properties did not immediately pay OCS as agreed but promised payment so Straumann continued to work on the returns and provided tax information to Trayne Properties on February 16 and 17. On February 17, 1984, OCS states that it again suspended work on the tax returns for nonpayment of fees, and that on February 28, 1984, Trayne Properties notified OCS that it intended to vacate the leased premises which it did on April 27.

Trayne Properties version of events is that OCS informed it on February 15, 1984 that no further work was being done for Trayne Properties and on February 21, 1984, Straumann advised Snyder that OCS would be unable to complete fourteen of the tax returns that OCS had earlier agreed to complete. Unable to find a CPA firm to complete the returns, Trayne Properties completed the work itself. Trayne Properties justified its breach of the lease on the ground that OCS's conduct in providing accounting services for Trayne Properties warranted such action.

Trayne Properties claimed damages resulting from lost business and from time spent in preparing returns.

The trial court specifically found that "[Trayne Properties] incurred damages in the amount of $11,478.81 in time spent preparing the tax returns themselves," but, in its attached memorandum, explained it wasn't damaged because it "expected to pay OCS more to do the job than they actually evaluated they had spent in completing the job themselves." The trial court concluded that OCS committed professional malpractice but "[t]he loss of business damages suffered by [Trayne Properties] are speculative and cannot be calculated to a reasonable degree of certainty." The trial court did not award any damages.

Trayne Properties appeals, and OCS filed a notice review, claiming the evidence does not sustain the trial court's conclusion that it committed malpractice.

## ISSUES

1. Does the evidence sustain the trial court's conclusion that the conduct of OCS constitutes malpractice?

2. Did the trial court properly deny Trayne Properties' claim for damages?

## ANALYSIS

### I

█ To recover in a malpractice case against an accountant, a plaintiff needs to prove the following:

1. a duty;
2. breach of that duty;
3. factual causation;
4. proximate causation; and
5. damages.

*Rockler & Co., Inc. v. Glickman, Isenberg, Lurie & Co.*, 273 N.W.2d 647, 650 (Minn. 1978). Trayne Properties contends that OCS committed malpractice because it was not until February 15, 1984 that OCS advised that work on the limited partnership tax returns was stopped, and it was not until February 21, 1984 that Trayne Properties was informed that OCS was not going to complete the work.

OCS contends that on December 30, 1983, it advised the office manager of the proposed suspension, that such notice was sufficient notice and that it is appropriate not to begin work until prior billings are paid.

█ The trial court's findings on lack of notice by OCS are reasonably supported by the evidence as a whole, and sustain the trial court's conclusion OCS committed malpractice. A trial court's findings will not be disturbed on appeal unless they are clearly erroneous in the sense that they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole. *In re the Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982).

### II

Trayne Properties argues that it is entitled to $499,750 in damages resulting from the malpractice committed by OCS because of damage to its reputation, loss of business, and loss of commission revenue. Trayne Properties claims information ob-

tained from a survey of eighty-nine investors who said they either would never invest with Trayne Properties, or probably would not invest in the future, or repeatedly questioned the ability of Trayne Properties to provide timely tax data and who may not be disposed to invest again, plus an employee's testimony as to the investment pattern of a typical investor provides adequate proof for an award of damages of $499,750. In addition, Trayne Properties claims $11,478.81 for tax return preparation.

OCS argues that Trayne Properties' claim for loss of business and commissions is too speculative because its proof for lost profits, investments, and commissions does not afford a reasonable basis upon which to fix damages. OCS argues that the employee's testimony was based on hearsay and amounted to the opinion of one person, thus, was subjective and conjectural.

OCS also notes that Trayne Properties did not call a single investor as a witness to explain why he might not invest with Trayne Properties nor is there any reliable evidence of how much anyone would have invested.

Lost profits may be recovered when "they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness." *Olson v. Aretz*, 346 N.W.2d 178, 182 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Oct. 30, 1984) (quoting *Cardinal Consulting Co. v. Circo Resorts*, 297 N.W.2d 260, 266–67 (Minn.1980)). *Cf. Costello v. Johnson*, 265 Minn. 204, 208, 121 N.W.2d 70, 74 (1963) (a plaintiff must prove damages by a fair preponderance of the evidence). While this rule does not call for absolute certainty, the "nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts." *Aretz*, 346 N.W.2d at 182. Thus, damages that are remote or speculative cannot be recovered. *Id.* at 183 (citing *Jackson v. Reiling*, 311 Minn. 562, 563, 249

N.W.2d 896, 897 (1977)). Because there is no general test for remote and speculative damages, such matters usually should be left for the judgment of the trial court. *Id.*

We find that Trayne Properties did not sufficiently prove its damages because the nature of the investment ventures it sponsors do not "support an inference of definite profits grounded upon a sure basis of fact." The proof of business loss offered by Trayne Properties, which consisted of its employee's testimony on three categories of investors and the typical investor, doesn't meet the requirement that an alleged loss be proven with certainty and exactness. We affirm the trial court's conclusion that Trayne's damages are too speculative and cannot be calculated to a reasonable degree of certainty.

## DECISION

We affirm the trial court's conclusions that OCS committed malpractice and that Trayne's damages are too speculative.

Affirmed.