Donald THOMAS and Thomas, Head &
Greisen, a professional corporation,
Appellants/Cross–Appellees,

v.

Florence CLEARY, Eugene Cleary, and
Cleary Diving Service, Inc.,
Appellees/Cross–Appellants,

v.

Theodore SHERWIN, Cross–Appellee.

Nos. S–1761, S–1828.

Supreme Court of Alaska.

Jan. 27, 1989.
Rehearing Denied May 9, 1989.

Burton C. Biss, Biss and Holmes, Wasilla, for appellants/cross-appellees.

George E. Weiss, Anaheim, Cal., and Charles W. Coe, Smith, Coe & Patterson, P.C., Anchorage, for appellees/cross-appellants.

OPINION

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

BURKE, Justice.

Eugene and Florence Cleary sued Donald Thomas, Theodore Sherwin, and the accounting firm of Thomas, Head and Greisen[1] (THG) for professional malpractice.

---

**1.** Donald Thomas was the Thomas, Head and Greisen accountant who handled the Clearys' business. Theodore Sherwin was employed as a tax manager with THG from November 10, 1976, through August 9, 1978.

Following a nine-day trial, a jury found the defendants negligent and concluded that their negligence was the proximate cause of damage to the Clearys in the amount of $212,269.

The defendants moved for judgment notwithstanding the verdict (J.N.O.V.) or a new trial claiming, among other things, that (1) the damages awarded were excessive in that they included speculative, future damages; (2) the verdicts were inconsistent; (3) the trial court erred in giving certain jury instructions; and (4) there was insufficient evidence to support a finding that Sherwin was negligent. Judge Milton Souter granted the motion as to Sherwin only, ordering that judgment be entered in his favor notwithstanding the jury's verdict. As to all other claims, the motion was denied.[2] Thomas and THG appeal from the denial of their motions and the awarding of prejudgment interest. The Clearys cross-appeal, claiming the jury should have been instructed that emotional damages are recoverable and that it was error to dismiss their claim against Sherwin.

We hold that the Clearys did not, and do not yet, have a cause of action against any of the defendants, because they have not yet suffered any damages. Thus, we REVERSE the judgment awarding such damages to the Clearys and AFFIRM the trial court's dismissal of their claim against Sherwin.

## BACKGROUND

In 1976, the Clearys employed THG to render professional tax and accounting advice in connection with the sale of their business, Cleary Diving Service, Inc. Mr. Cleary met with Donald Thomas, a THG accountant, to discuss the proposed sale and "to find out the tax situation on it." Thomas provided advice concerning liquidation and helped prepare the corporate resolution to dissolve the company. The terms were finalized, and on July 2, 1976, the Clearys signed the final sale documents which Thomas had approved.

Thomas continued to act as the Clearys' accountant. He agreed to file their 1976 and 1977 personal and corporate tax returns and to provide the information required on the returns regarding the corporation's liquidation.[3] On January 13, 1978, more than eighteen months after the sale, the Clearys received a letter from THG informing them that they owed an additional $100,000 in taxes in connection with the sale. No THG accountant filed a corporate tax return for the Clearys, and no return has ever been filed for 1977,[4] the year Cleary Diving Service, Inc. was liquidated. However, the Clearys argued that the corporation should have paid about $200,000 in taxes at that time, although the record is unclear as to the precise figure. It is this failure to file and pay corporate taxes, and the miscalculation of taxes due, which formed the basis of the Clearys' professional malpractice action.

■ The parties proceeded to trial, and the Clearys attempted to prove that the defendants acted negligently in handling the sale of their business. At closing argument, the Clearys' counsel requested the following damages: (1) $3,000 for the money the Clearys paid to the defendants for the faulty service, (2) $30,000 for the "future cost of handling this problem" (i.e., to fight their claim in tax court), (3) $2,000 to update their corporate returns, and (4) an additional amount equal to what the Clearys owe in unpaid, corporate taxes.[5] The

**2.** Judge Souter entered final judgment for the Clearys for $212,269, plus prejudgment interest of $201,681.72 against Thomas and THG.

**3.** According to Thomas' testimony, the 1976 corporate return was not to be the final return for Cleary Diving Service, Inc. In July, 1976, Thomas informed the Internal Revenue Service (IRS) that the corporation was liquidating, which meant that Cleary Diving Service had twelve months to liquidate. Thus, Thomas

planned to file both a 1976 and a 1977 corporate return.

**4.** There was some question at trial over whose responsibility it was to file the return. The jury, however, specifically found that the Clearys were in no way contributorily negligent. That issue is not presented to us in this appeal.

**5.** The Clearys were, and are, under a legal duty to pay taxes, and the measure of damages employed by the trial court was erroneous. We

jury found that the Clearys suffered $212,-269 in "damages ... proximately caused by the professional negligence of the defendants" and that the damages were incurred as of July 2, 1976, the date the final sale papers were signed. On July 18, 1986, final judgment was entered in this amount, with prejudgment interest computed from July 2, 1976.

## DISCUSSION

The thrust of Thomas' and THG's argument on appeal concerns the amount of damages awarded. They argue first that the verdict improperly includes potential tax liability which has not yet been paid to, or assessed by, the IRS, and is therefore speculative damage. Second, they contend that the verdict is inconsistent. The jury found that the plaintiffs' damages occurred on July 2, 1976, but no evidence supports the finding that the Clearys incurred any damages on that date. The Clearys, on the other hand, claim the damages awarded are neither speculative nor inconsistent. They argue that they have a legal duty to pay the IRS an amount consistent with the amount awarded and that the "jury could have properly adjusted many of the evidentiary possibilities to come up with any number of legitimate damage verdicts." We agree with Thomas and THG that the damages awarded to the Clearys were improper.

 The elements of a cause of action for professional negligence are: (1) a duty, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) *actual loss or damage resulting from the professional's negligence. Linck v. Barokas & Martin,* 667 P.2d 171, 173 n. 4 (Alaska 1983). *See also Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971) (listing elements of professional malpractice); *Olson, Clough & Straumann, CPA's v. Trayne Properties,* 392 N.W.2d 2, 4 (Minn.App.1986) (to recover in malpractice against an accountant, a plaintiff must prove duty, breach, factual causation, proximate causation, and damages). Injury or damage, then, is an essential element of a cause of action for professional malpractice.[6] As we stated in *Austin v. Fulton Insurance,* 444 P.2d 536, 539 (Alaska 1968):

A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff.... [T]here must be an injury or harm to appellant as a consequence of appellees' negligence to serve as a basis for recovery of damages before the tort [becomes] actionable....

(Footnote omitted). Thus, in discussing a client's claim against an attorney for malpractice, the California Supreme Court has said:

The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm— not yet realized—does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of [the professional's] negligence, the client cannot establish a cause of action for malpractice.

*Budd,* 98 Cal.Rptr. at 852, 491 P.2d at 436 (citations and footnote omitted). *See also Wall v. Lewis,* 366 N.W.2d 471, 473 (N.D. 1985) (cause of action for malpractice does not accrue until the client has incurred some damage).

note that if the malpractice action ripens, the appropriate measure of damages is the difference between what the Clearys would have owed in any event if the tax returns were properly prepared, and what they owe now because of their accountants' negligence, plus incidental damages. The Clearys should not recover as damages all taxes owed upon the corporate liquidation.

6. We have held that for statute of limitations purposes, attorney malpractice actions based on negligence are tort, rather than contract, claims. *Greater Area, Inc. v. Bookman,* 657 P.2d 828, 829 (Alaska 1982). Similarly, in this case, where the essence of the Clearys' complaint was negligence, and the accountant/client "contract" only gave rise to the duty of reasonable care that was allegedly breached, the gravamen of the complaint lies in tort, not contract. *See Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988); *Van Horn Lodge v. White,* 627 P.2d 641, 643 (Alaska 1981).

■ We hold that the Clearys have not suffered the required injury or harm as a result of the defendants' negligence. The record establishes that the IRS has never sent the Clearys a deficiency notice nor imposed any tax assessment as a result of the failure to file their 1977 corporate tax returns.[7]

An analogous situation arose in *Philips v. Giles*, 620 S.W.2d 750 (Tex.Civ.App. 1981), where a party in a divorce proceeding sued her attorney for malpractice, alleging he negligently advised her that the settlement she entered into would involve no tax implications. The relator was subsequently told by her accountant that there were tax consequences. She filed returns, but the IRS never assessed taxes on the money she reported and never determined that the money in question was taxable. *Id.* at 750. The court held that her malpractice action had been properly abated because her suit was "prematurely instituted." *Id.* at 751. The court concluded that

relator's cause of action has not accrued because no tax liability has been established by the Internal Revenue Service. Thus, relator has yet to be injured.

... Although relator believes the taxes are due, she may be mistaken, and, indeed, no tax liability, insofar as we know, may exist.

*Id.* Similarly, we conclude that since it has not yet been determined whether the Clearys are liable for the taxes in question, they have "not been harmed and, therefore, [their] cause of action has not accrued." *Id.; see also Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill.App.3d 957, 46 Ill. Dec. 374, 376, 414 N.E.2d 96, 98 (1980) (Plaintiff's malpractice action was premature because his tax liability had not yet been determined in tax court. Thus, he had not yet suffered any actual loss as a result of his attorney's actions.).

We find further support for our conclusion in those cases which discuss the accrual of causes of action in the context of statutes of limitations. In *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967), the court found that:

plaintiff's cause of action [for accountant malpractice] did not arise until the tax deficiency was assessed by the Commissioner of Internal Revenue. *Prior to assessment the plaintiff had not been injured....* If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action.

(Emphasis added). Similarly, in *Streib v. Veigel*, 109 Idaho 174, 178, 706 P.2d 63, 67 (1985), the court held that "no damages accrued to the plaintiffs until the time of the Internal Revenue Service's assessment of penalties and interest." The court further stated that the preparation of income tax returns contemplates a review by the IRS "with damages resulting *at that time* if the returns have been erroneously prepared." *Id.* 109 Idaho at 179, 706 P.2d at 68 (emphasis in original). *See also Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1, 5 (1972) (the date the notice of tax deficiency assessment was received is date statute of limitations begins to run, since legal harm was sustained at that time); *Chisholm v. Scott*, 86 N.M. 707, 709, 526 P.2d 1300, 1302 (App.1974) (liability imposed by the IRS' notice becomes the injury which forms the plaintiff's cause of action); *Wall v. Lewis*, 366 N.W.2d 471, 473 (N.D.1985) (actual damage has been incurred when the IRS imposes a tax assessment, thereby creating an enforceable obligation against the client); *Godfrey v. Bick & Monte*, 77 Or. App. 429, 713 P.2d 655, 657 (1985), *review denied*, 301 Or. 165, 719 P.2d 874 (1986) (plaintiff was damaged when he incurred attorney and accounting fees in his attempt to resolve the IRS problems).[8]

---

7. Because the 1977 corporate tax return was never filed, the statute of limitations never began to run. Thus, it is possible that the IRS could now try to collect the eleven-year-old taxes from the corporation. The Clearys, as transferees of the corporate assets, may be liable for the amount the corporation should have paid

plus penalties and interest. *See* 26 U.S.C. § 6501(c)(3) (1967).

8. We distinguish this case from *Linck v. Barokas & Martin*, 667 P.2d 171 (Alaska 1983). In *Linck,* the issue was whether the allegations of the complaint were sufficient to survive a motion to dismiss for failure to state a claim, filed pursu-

■ The IRS has not yet assessed a tax deficiency against the Clearys. Therefore, they have incurred no damage, and consequently, no tort has occurred. Only when the tax deficiency is assessed will the tort of which the Clearys complained ripen. Until then, the Clearys have not been harmed and are not entitled to recover. *See Greater Area Inc. v. Bookman,* 657 P.2d 828, 829 n. 3 (Alaska 1982) (even if client discovers attorney's negligent acts before he suffers damages, the cause of action for malpractice is not complete until actual damages are suffered).[9]

## CONCLUSION

■ We hold that the Clearys' action for accounting malpractice is not yet ripe. The case is REMANDED to the superior court with instructions to VACATE the judgment without prejudice.[10]

MATTHEWS, C.J., with whom RABINOWITZ, J., joins, dissent.

MATTHEWS, Chief Justice, joined by RABINOWITZ, Justice, dissenting.

I disagree with the majority's conclusion that the Clearys' cause of action is not ripe for adjudication. As explained below,

there was evidence that the Clearys suffered irremedial damage as a result of Thomas' negligence in liquidating their corporation. Therefore, I would affirm the jury's damage award.

One theory which the Clearys presented was that they retained Thomas for advice on the best way to sell their business from a tax standpoint. Shelby Stastny, an expert tax accountant, testified that a stock sale, rather than a sale of assets, would have effected a significant tax savings. He further testified that Thomas' failure to complete the sale of assets within twelve months after the adoption of the plan of liquidation, as required by I.R.C. § 337, compounded the Clearys' tax liability.[1] Stastny testified that if Thomas had structured the sale as a sale of stock, the Clearys would have owed the I.R.S. $165,682, whereas taxes owed following a sale of assets in violation of the Section 337 deadline total $373,141—a difference of $207,459.[2]

Stastny testified that the Clearys personally owe taxes to the I.R.S. under the transferee liability sections of the Tax Code. He stated that there is not a statute of limita-

---

ant to Civil Rule 12(b)(6). Thus, it was "enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action." *Id.* at 173. In the case at bar, the issue is whether there is *evidence* to support the jury's verdict.

9. The Clearys claim in their cross-appeal that the trial court erred in failing to instruct the jury that emotional damages are recoverable. This court has never allowed recovery for emotional damages on a malpractice claim. Moreover, we note that the evidence in the record does not support a finding that the defendants' conduct reached the level of outrage which we have required in the past to support emotional damages. *See, e.g., Richardson v. Fairbanks North Star Borough,* 705 P.2d 454, 456–57 (Alaska 1985) (reckless killing of pet animal); *Croft v. Wicker,* 737 P.2d 789, 792–93 (Alaska 1987) (sexual abuse of daughter where emotional distress of parents was foreseeable). Thus, it was not erroneous for the trial judge to refuse to instruct the jury that the Clearys could recover damages for emotional distress.

10. This result renders the remaining issues raised by the parties moot. However, we affirm the trial court's dismissal of the Clearys' action

against Sherwin; the record lacks any indication that he acted negligently. Further, we note that the award of prejudgment interest on those damages awarded for future tax liability was improper. The Clearys have not yet lost the use of such money for any period of time. *See Bevins v. Peoples Bank & Trust,* 671 P.2d 875, 881 (Alaska 1983) (purpose of prejudgment interest is to compensate successful claimant for losing use of money between date he or she was entitled to it and date of judgment). *See also Orsini v. Bratten,* 713 P.2d 791, 794 (Alaska 1986) (injured clients entitled to prejudgment interest computed only from the time the tax repayments were actually made to the IRS).

1. *See* Treas.Reg. § 1.337–1 (as amended in 1965):

 [I]f a corporation distributes all of its assets in complete liquidation within 12–months [sic] after the adoption of a plan of liquidation, ... no gain or loss shall be recognized from the sale of the property ... during such 12–month period. All assets ... must be distributed within the 12–month period.

2. In addition, he calculated penalties and interest under various alternative circumstances.

tions applicable to this case because no tax return has been filed.[3]

The fact that the Clearys incurred an added tax liability as a result of Thomas' negligent advice is sufficient to give rise to a cause of action.[4] The law recognizes that incurring a liability for taxes is a damage, as language in our decision in *Linck v. Barokas & Martin*, 667 P.2d 171 (Alaska 1983) aptly illustrates.[5]

In *Linck* it was alleged that an accountant and attorneys had negligently failed to advise Gertrude Linck to disclaim her inherited interest in her deceased husband's estate within the six month deadline imposed by § 2518 of the Internal Revenue Code. A timely disclaimer would have allowed the property to pass directly to her children without payment of a second estate tax upon Gertrude's death, or without a gift tax when she gave property to the children during her lifetime. After the disclaimer deadline had expired, Gertrude gave some of the property to her children and incurred, but had not paid, gift tax liability. Gertrude and her three children sued the accountant and the attorneys. The trial court dismissed the complaint for failure to state a claim. On appeal, we reversed.

The defendants in *Linck* claimed that their negligence had not "caused actual present damage." *Id.* at 173. We rejected this, stating that Gertrude had *"incurred a present liability to pay gift taxes* and attorney's and accountant's fees, in connection with gifts made to her children in lieu of disclaimed property." *Id.* (emphasis added). Further, as to the children's claim, we stated that they "are damaged *not only because they will receive less upon the death of their mother (imposition of 'second' estate tax)*, but also because they will

have to forego the use of the money until their mother's death." *Id.* at 174 (emphasis added).

Just as the widow in *Linck* could maintain an action because she had incurred a present liability to pay taxes, but had not paid them, and just as the children in *Linck* could sue because the amount they would receive would be reduced by as yet unpaid taxes, the Clearys in the present case have incurred an unpaid tax liability which is a realization of damages sufficient to permit suit.

Another instructive case is *Yandell v. Baker*, 258 Cal.App.2d 308, 65 Cal.Rptr. 606 (1968) *overruled on other grounds, Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 846 n. 29, 491 P.2d 421, 430 n. 29 (1971), *cited with approval in United States v. Gutterman*, 701 F.2d 104 (9th Cir.1983). In *Yandell*, Mr. and Mrs. Yandell retained an attorney (Baker) and accountants for advice concerning several tax problems of corporations owned and controlled by them. After reviewing the Yandells' personal and corporate financial structure, Baker concluded that he could minimize the Yandells' taxes by dissolving one of their corporations, distributing its assets to the Yandells, then redistributing those assets to two other corporations owned by the Yandells. Baker advised the Yandells that his corporate dissolution plan would provide them with long term capital gain treatment on the surplus earned from their dissolved corporation. The Internal Revenue Service concluded, however, that the manner and method of dissolution was actually a corporate reorganization. Therefore, the Service taxed the transaction at ordinary income

---

3. *See* 26 U.S.C. § 6501(c)(3) (1982): "In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

4. In addition, the Clearys are entitled to recover the $3,000 in fees paid Thomas for his faulty advice. *See Orsini v. Bratten*, 713 P.2d 791, 794 (Alaska 1986).

5. *See also Yandell v. Baker*, 258 Cal.App.2d 308, 65 Cal.Rptr. 606 (1968) (liability for payment of ordinary income tax rates, rather than lower capital gains rates constituted actionable damage even though Internal Revenue Service had not yet acted), *overruled on other grounds, Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 846 n. 29, 491 P.2d 421, 430 n. 29 (1971), *cited with approval in United States v. Gutterman*, 701 F.2d 104, 106 (9th Cir.1983).

tax rates instead of the more favorable capital gain rates.

The Yandells sued Baker for the negligent advice that resulted in the added tax liability. On appeal, the court specifically addressed the issue of when a lawyer's negligent tax practice damages a client:

> Once [the Yandells' corporation] was dissolved and its assets were distributed, the *liability for payment of ordinary income rates, rather than capital gains rates, arose and the damage was done —even though the amount of damage or liability could not be determined until the Internal Revenue Service acted later.*

65 Cal.Rptr. at 610 (emphasis added), *quoted with approval in United States v. Gutterman,* 701 F.2d at 106.

Like the plaintiffs in *Linck* and *Yandell,* the Clearys incurred an unnecessary tax liability as a result of negligent tax advice. They suffered actual harm when the consequences of the negligent advice became "irremediable." *See Robinson v. McGinn,* 195 Cal.App.3d 66, 240 Cal.Rptr. 423, 428 (1987) ("harm is 'actual and appreciable' only if and when it becomes irremediable"). "Irremediable, by definition, means something which is impossible to remedy; something which is lost, or incorrigible." *Id.* In *Linck,* when Mrs. Linck's attorneys failed to advise her within six months of her husband's death that she should disclaim her inherited interest, the error became irremediable and, as we held, she incurred actual damages at that time. *Linck,* 667 P.2d at 173. In *Yandell,* the Yandells incurred actual damages when their corporation was dissolved and its assets distributed. At that point, their liability for added taxes became impossible to remedy. Therefore, they were damaged at the time of dissolution and distribution. Finally, the Clearys incurred irremediable damage when the corporation was liquidated through a sale of assets rather than the more favorable stock sale.[6] They were

further damaged when Thomas failed to complete the sale-of-assets liquidation within twelve months. The damage done in both instances is actual and irremediable.

The majority concludes that the tort in this case will be complete "[o]nly when the tax deficiency is assessed." Majority Opinion at 1094. However, the assessment of the tax deficiency is simply the last time— in the context of tolling the statute of limitations—that a plaintiff can claim ignorance of his actual damages as a result of professional negligence. "From that point on, plaintiffs can scarcely claim that they [do] not know that they [are] exposed to substantial tax liability...." *Brower v. Davidson, Deckert, Schutter & Glassman,* 686 S.W.2d 1, 3 (Mo.App.1984).

The jury, as trier of fact in this case, determined that the Clearys incurred actual damages as a result of Thomas' negligence. The testimony of Stastny supports the jury's findings. The notice of tax deficiency is nothing more than the Clearys' "ticket to the Tax Court,"[7] a "procedural device designed to inform the taxpayer that he has owed taxes since their due date. Its purpose is so that he can properly take an orderly appeal. It is not a new assessment of taxes never owing." *Chisholm v. Scott,* 86 N.M. 707, 710, 526 P.2d 1300, 1303 (App. 1974) (Hendley J., dissenting).

I would affirm the jury's award of damages.

---

6. *See also McKeown v. First Nat'l Bank of Cal.,* 194 Cal.App.3d 1225, 240 Cal.Rptr. 127, 130–131 (1987) (error became irremediable when appellants acted on negligent tax advice).

7. Garbis, Junghams & Struntz, *Federal Tax Litigation,* ¶ 3.02[2], at 3–6 (1985).