Ruth GUDSCHINSKY, Appellant,

v.

Glenda HARTILL, as Personal
Representative of the Estate
of J.C. Bewley, Appellee.

No. S–3651.

Supreme Court of Alaska.

July 26, 1991.

**852**

Michael A. Stepovich, Fairbanks, for appellant.

Valerie M. Therrien, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Ruth Gudschinsky appeals from an order of the superior court assessing her a total of $45,702.57 in the form of surcharges stemming from her tenure as personal representative of the estate of J.C. Bewley. The appellee is Glenda Hartill, the current personal representative of the estate and one of Bewley's children. Hartill replaced Gudschinsky as personal representative in 1987 after Hartill petitioned the court to have Gudschinsky removed.

## II. FACTS AND PROCEEDINGS

J.C. Bewley died testate on June 11, 1985. Bewley's will was admitted to probate in Alaska on June 19, 1985, with Ruth Gudschinsky acting as personal representative of the estate. Bewley was survived by three children: Glenda Hartill of Oregon, Norma Womack of Oregon, and Jesse Bewley of Fairbanks. The will bequeathed the estate to the children in equal shares.

Gudschinsky had managed some of Bewley's real property before he died as part of a continuing long-term verbal contract between friends. Although she hired an accountant and an attorney to assist her in handling the estate after Bewley died, she continued to manage things much the same way as she had when Bewley was alive. Bewley's estate, valued to be at least $760,601, consisted of real property in California, Oregon, and Alaska and assorted personal property, including over $125,000 in liquid investments.

Gudschinsky was appointed personal representative in June 1985. Over the next two years, her performance led Hartill to petition the court for her removal as personal representative.[1] On November 10, 1987, the probate master entered findings of fact and conclusions of law on Hartill's removal petition. Citing a lack of full documentation, carelessness, and delay in settling the estate, the master found that it would be in the "best interests of the estate" to replace Gudschinsky with Hartill as personal representative.[2]

A year and a half later, on May 15, 1989, Hartill filed a "Petition for Judgment Against Ruth Gudschinsky." Following

---

**1.** In her removal petition, Hartill claimed, among other things, that Gudschinsky had improperly administered the estate and had failed to take steps necessary to settle the estate. Bewley's other two children opposed Hartill's petition and submitted affidavits supporting Gudschinsky.

**2.** The "best interests of the estate" standard is enunciated in AS 13.16.295(b). The November 10 findings and conclusions were amended on December 2, but there were no significant changes. The new findings and conclusions were approved by the superior court on December 3.

hearings before another probate master in August 1989, findings and recommendations were entered on September 15. The superior court adopted these findings and recommendations on October 12, entering judgment against Gudschinsky in the amount of $45,702.57. The $45,702.57 figure was based on various surcharges which will be discussed in turn.

## III. DISCUSSION [3]

### A. *The Pre–Death Charges*

■ The first surcharge was for "pre-death charges" of $4,344.33. On July 3, 1985, notice to creditors was first published, giving them until November 3, 1985, to present their claims against the estate.[4] In July and September of 1985, Gudschinsky paid herself from estate funds a total of $4,344.33 for debts allegedly owed by Bewley to Gudschinsky at the time of Bewley's death. The probate master found that: 1) it was "inappropriate" for Gudschinsky to reimburse herself ahead of other possible creditors, and 2) her reimbursement was supported only by "scratch-pad" type notes and thus was "not satisfactorily documented to allow court approval" several years later.

The master did not make clear the legal basis for this assessment. Although she begins her discussion by citing AS 13.16.-

460, § 460 does not provide for liability of the personal representative.[5] Alaska Statute 13.16.480 provides for liability of a personal representative in cases of early payment.[6] But § 480 provides for such liability only in instances where another claimant has been *injured* by the early payment. There has been no finding, express or implied, to that effect. Without such a finding, the master could not properly surcharge Gudschinsky for the pre-death charges based on § 480.

Reliance on AS 13.16.395,[7] as suggested by Hartill, suffers from the same deficiency. To impose liability based on § 395, there must be findings that (1) there was an improper exercise of power, (2) there was "damage or loss" to the party to whom the personal representative is liable, and (3) this damage or loss resulted from a breach of a fiduciary duty. Although the master found that it was inappropriate for Gudschinsky to reimburse herself ahead of other possible creditors, thus making the first required finding, there has been no finding of any "damage or loss" to any "interested persons," which is the second required finding. Nor has the third required finding been made, i.e., that Gudschinsky breached her fiduciary duty by making such payments. Without these findings, it was error to surcharge Gudschinsky for the pre-death charges based on § 395.[8]

---

3. We have considered Hartill's jurisdictional arguments and find them to be without merit.

4. AS 13.16.460(a) provides that creditors' claims against the estate are barred unless presented to the personal representative within four months after first publication of notice to creditors.

5. The New Mexico Supreme Court, interpreting a statute similar to AS 13.16.460, held that a disbursement to an executor could not be allowed to stand where no claim was filed. *In re Hamilton*, 97 N.M. 111, 637 P.2d 542, 545–47 (1981). But *Hamilton* does not deal with reimbursement before other possible creditors, which was the master's justification for the surcharge on Gudschinsky.

6. AS 13.16.480(b) provides:
   The personal representative at any time may pay any just claim which has not been barred, with or without formal presentation, but the personal representative is personally liable to any other claimant whose claim is

allowed and who is injured by such payment if
   (1) the payment was made before the expiration of [four months from the date of the first publication of the notice to creditors]....

7. AS 13.16.395 provides:
   If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from the breach of fiduciary duty to the same extent as a trustee of an express trust.

8. We note that neither the master nor Hartill called our attention to any statutory requirement that a personal representative submit written documentation to prove his or her own claim. Nor does *In re Estate of Gregory*, 487 P.2d 59 (Alaska 1971), establish such a requirement. There we upheld a lower court's ruling that a personal representative was required to repay the estate certain insurance payments be-

We therefore reverse that part of the superior court's order affirming the master's surcharge against Gudschinsky for the pre-death charges. We remand to the superior court with directions to remand the matter to the master to make findings of fact on the issues discussed above.[9]

### B. *Personal Draws*

The master surcharged Gudschinsky $2,297.05 for excessive fees as personal representative. A personal representative is entitled to "reasonable compensation for services." AS 13.16.430. We, like most other courts, review a lower court's determination of "reasonable compensation" only for abuse of discretion. *See, e.g., Estate of Tully*, 545 A.2d 1275, 1276–78 (Me. 1988); *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800, 801–02 (1985).

In the proceedings below, it was found that a reasonable fee was $20 per hour and that Gudschinsky should be allowed to bill the estate for 1000 hours. In setting the rate at $20 per hour, the master considered Gudschinsky's lack of special expertise, the large number of hours spent without much to show for it, the poor job done in administering the estate, and that the customary fee in the area is about $10–$20 per hour.

Gudschinsky does not dispute these considerations; she simply maintains that her fee of $22,297.05 was not excessive in light of the size of the estate. However, the only case she cites in support of this position is *In re Estate of Wright*, 132 Ariz. 555, 647 P.2d 1153 (App.1982). It is true that the total fee in *Wright* was larger than what was awarded to Gudschinsky. Yet if one calculates the representative's *hourly* fee in *Wright*, it turns out that it was only $12.50 per hour—$7.50 *less* than

the hourly rate awarded to Gudschinsky. In light of the master's findings, we find no abuse of discretion in setting Gudschinsky's rate at $20 per hour.

Gudschinsky also contests the master's finding that she should be compensated for only 1000 hours instead of the 1148 hours she requested. The master cited an error rate of approximately 10% in the time sheets submitted by Gudschinsky. Considering this and the fact that Gudschinsky's sloppy administration resulted in duplicative work by the new personal representative, we cannot say that the figure of 1000 hours is clearly erroneous. Thus, we affirm the superior court's order with respect to the surcharge of $2,297.05 for excessive fees.

### C. *Expenditures After Authority Lapsed*

Gudschinsky was assessed $1,834.38 for unapproved payments made for work done on estate property in Fairbanks after the court had issued an order requiring court approval. Although Gudschinsky paid out $2,334.38, the master allowed $500 for "reasonable" janitorial services as permitted under the court order.

Gudschinsky argues that none of the necessary findings for imposing this surcharge were ever made. Again, the master did not specify the legal basis for imposing this surcharge. Hartill contends that the surcharge was based on AS 13.16.395.[10] As discussed above, to impose liability based on § 395 requires that there be findings of (1) an improper exercise of power, (2) damage or loss, and (3) breach of a fiduciary duty. Not all of these findings were made.

The master implicitly found that there was an improper exercise of power.[11]

---

cause she had not introduced *any* evidence to support her claim to the money. *Id.* at 64.

**9.** We also call attention to a possible error in calculating the pre-death charges. Although Gudschinsky testified that she reimbursed herself $4,404.33 for pre-death charges, the master surcharged her only $4,344.33. The master may have switched a digit in one of Gudschinsky's reimbursement checks from $1,882.04 to

$1,822.04. This would account for the difference.

**10.** *See supra* note 7.

**11.** The master's report states: "[Gudschinsky] was prohibited by court order to expend any further funds from the estate after August 31, 1987.... [Gudschinsky nevertheless] paid out over $2,000 for extensive work to be done at 508 9th."

However, there was no finding of "damage or loss" to the estate resulting from the payments.[12] As Gudschinsky notes, the entire benefit of these payments went to the estate. There was no finding that Gudschinsky appropriated any of the benefit from these payments to herself. Nor was there any finding concerning the breach of a fiduciary duty. Given the state of the record, we reverse the superior court's order to the extent it affirms the surcharge for expenditures after authority lapsed. We remand to the superior court with directions to remand to the master to make specific findings on the issues discussed above.

## D. Penalties and Interest on Late Taxes

As a result of the late filing of estate tax returns, the estate was assessed $26,688.84 in penalties and interest. The master surcharged Gudschinsky this amount based on AS 13.16.485(b).[13] The master also cited 47 A.L.R.3d 507 (1973) for the general proposition that a personal representative is personally liable for penalties and interest if estate tax returns are filed late. Gudschinsky acknowledges this general rule but argues that it should not apply in her case.

■ Gudschinsky makes several arguments to escape all or part of this surcharge. First, she argues that she reasonably relied on the advice of her accountant who, she claims, informed her that the returns had been timely filed. We have found no cases which absolve from liability a personal representative who took no steps to assure that the estate's tax return had been filed on time. See, e.g., In re Estate of Bartlett, 680 P.2d 369, 377 (Okla. 1984) (executor not excused by failure of legal counsel to notify him that taxes were due); In re Estate of Lohm, 440 Pa. 268,

269 A.2d 451 (1970) (executor should be aware that deadline exists); see also 47 A.L.R.3d 512 (1973) (fiduciary cannot escape liability if he "blindly leav[es] all tax matters and considerations affecting an estate to his attorney"). We agree with those courts which hold that if the personal representative displays some effort to ascertain the deadline or comply with it, then a delay might be justified. See, e.g., Estate of Smith, 767 S.W.2d 29, 36 (Mo. 1989) (personal representative not personally liable after asking accountant to secure filing extension); Giesen v. United States, 369 F.Supp. 33, 35 (W.D.Wis.1973) (financially inexperienced executor asked and was assured by tax attorney that taxes would be filed on time); see also Wohl v. Lewy, 505 So.2d 525, 526 (Fla.App.1987) (personal representative cannot be held liable for costs incurred in erroneously claiming tax deduction where he relied on advice of accountant).

In Gudschinsky's case, she apparently left all tax matters to the accountant. Gudschinsky does not point to any evidence in the record which shows that she tried to find out when the taxes were due. She merely claims that she interpreted a conversation with her accountant to mean that the estate's tax returns had been filed on time. We find that Gudschinsky's mere passive acceptance of an interpretation of a conversation with her accountant does not relieve her of liability for penalties and interest.

■ Second, Gudschinsky argues that she should not be held liable for the late penalties because Hartill, as the new personal representative, failed to appeal the State of Alaska's decision not to waive the tax penalty despite the fact that all other jurisdictions had done so. We see no reason why the estate or its new personal representative is under a duty to appeal the

---

12. Even if the estate were to some extent injured by these payments, the master should have determined the value of the unauthorized work done on the 9th Street property and deducted that from the surcharge. See Estate of Tully, 545 A.2d 1275 (Me.1988); In re Estate of Bartlett, 680 P.2d 369 (Okla.1984). Such a procedure would have more closely approximated the estate's damages.

13. AS 13.16.485(b) provides:

A personal representative is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if personally at fault.

state's decision absent a showing that such an appeal had at least a reasonable likelihood of success. The mere fact that other jurisdictions waived their penalties does not establish a reasonable likelihood that such an appeal would succeed in Alaska. It is possible that the standard for granting waivers is higher in Alaska than in other jurisdictions. In any case, Gudschinsky cites no evidence that an appeal would likely have succeeded. In fact, the only evidence revealed by our own investigation of the record suggests that a successful appeal was unlikely.

■ Finally, citing *Orsini v. Bratten,* 713 P.2d 791 (Alaska 1986), Gudschinsky argues that she should not have to pay the surcharge for *interest* on the late taxes. In *Orsini,* Orsini had given the Brattens erroneous investment and tax advice, including the incorrect claiming of investment tax credits on their tax returns. This resulted in state and federal interest penalties charged against the Brattens. *Id.* at 792. On appeal, we held that the Brattens could not recover these charges from Orsini:

> [T]he Brattens are not entitled to receive damages for interest repaid to either the federal government or to the state government. The Brattens had the use of these monies and, presumably, were able to earn interest while they held it. Therefore, paying the interest penalties effectively cost the Brattens nothing.

*Id.* at 794. The master distinguished *Orsini* on the ground that the Brattens were individuals free to risk their money as they desired whereas Gudschinsky's role as personal representative did not allow her the same freedom. Although this distinction certainly exists, it is nevertheless true that a personal representative has the *duty* of prudently investing the assets of the estate until they are ready for distribution. *In re Estate of Gregory,* 487 P.2d 59, 64 (Alaska 1971).

Bewley's estate was apparently receiving interest on its large reserves of cash.[14] We therefore reverse that part of the superior court's order affirming the master's surcharge for interest paid on late taxes. However, since we cannot determine from the master's decision the breakdown between the interest and the penalties, we remand to the superior court with directions to remand to the master to make such a determination and to assess only the penalties against Gudschinsky.

### E. Costs and Attorney's Fees

■ The last surcharge was for "costs and attorney's fees required to review and correct work done by [Gudschinsky] as personal representative." The master recommended that the estate be awarded an "equitable assessment of $10,000." We review such an award for any abuse of discretion.[15]

Gudschinsky is properly responsible for the costs and fees required to review and correct the improper work done by her.[16] However, the master made no findings as to how much extra cost was incurred by the estate in this remedial work. We recognize the difficulty in this matter, but the master cannot simply pick an arbitrary number.[17] To do so is an abuse of discretion. Findings establishing at least a ballpark figure are required. Therefore, we reverse the superior court's order with re-

**14.** The record reveals that, as of October 23, 1987, the estate had $120,798 in a cash management fund and $7,135 in a money market fund.

**15.** *Cf. In re Estate of Gregory,* 487 P.2d 59, 64 (Alaska 1971) (reviewing award of attorney's fees to administrator under abuse of discretion standard).

**16.** Gudschinsky does not contest this and has thus waived the issue.

**17.** The master did not cite any specific evidence in support of the $10,000 award for attorney's

fees and costs. Hartill did testify as to the additional costs and attorney's fees incurred after she became personal representative. However, when the accounting report on which Hartill's testimony was based was offered into evidence, the master said:

> [T]he Court will take i[t] as just a summary of what's going on, but again it's probably more appropriate that it would be pleading rather than an exhibit. It has *no weight* as to the truth of the contents of it.

(Emphasis added).

spect to the assessment of $10,000 in attorney's fees and costs, and we remand to the superior court with directions to remand to the master to make findings on the extra expenses incurred due to any improper management of the estate by Gudschinsky.

## IV. CONCLUSION

To summarize, the order of the superior court affirming the surcharges against Gudschinsky is affirmed in part and reversed in part. First, the $4,344.33 surcharge for the pre-death claims is reversed and remanded for the master to make appropriate findings under AS 13.16.480 or AS 13.16.395. Second, the surcharge of $1,834.38 for expenditures after authority lapsed is reversed since not all of the required statutory findings had been made by the court. Upon remand, the master is to make all appropriate findings under AS 13.16.395. Third, the surcharge for interest paid by the estate for the late payment of taxes is reversed. Upon remand, the master is to determine how much of the $26,688.84 surcharge was for interest and how much was for penalties. Finally, the $10,000 surcharge against Gudschinsky for attorney's fees is reversed and remanded for findings on the amount of extra expenses incurred resulting from Gudschinsky's management of the estate's affairs. AFFIRMED in part, REVERSED in part, and REMANDED.